NOYCE *v.* ROSS.

1. APPEAL AND ERROR—NONJURY CASES—QUESTION OF FACT.
   The Supreme Court does not substitute its judgment on questions of fact in nonjury cases for that of the trial judge except where the evidence clearly preponderates in the other direction, or it becomes apparent that an erroneous principle of law has been applied to the facts.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 895 *et seq.*
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 324–330.
Rights and duties at intersection of arterial or other favored highway and nonfavored highway. 58 ALR 1197; 81 ALR 185.
[4] 5A Am Jur, Automobiles and Highway Traffic § 322.
[5, 6] 5A Am Jur, Automobiles and Highway Traffic § 323.
Rights and duties at intersection of arterial or other favored highway and nonfavored highway. 58 ALR 1197; 81 ALR 185.
[7] 5A Am Jur, Automobiles and Highway Traffic § 1013.

2. Automobiles—Crossing Arterial Highway—Stopping—Yielding Right-of-Way.

A motorist on an inferior highway has the duty to stop before entering a State trunk-line highway, to yield the right-of-way to traffic lawfully approaching on the favored highway and to continue to yield the right-of-way until he knows that traffic on the main arterial highway is clear before attempting to cross (CLS 1956, § 257.651).

3. Same—Purpose of Arterial Highways.

Arterial highways and superhighways are designed for the purpose of moving automobile traffic at high rates of speed.

4. Same—Arterial Highway—Negligence of Drivers on Subordinate Highway.

The driver on an arterial highway has a right to assume that drivers on subordinate highways will yield him the right-of-way and is not bound to anticipate negligent acts on the part of those approaching the arterial highway.

5. Same—Arterial Highways—Duties of Drivers.

The driver on an arterial highway has the duty to exercise reasonable care for his own protection and a continuing duty to exercise reasonable care to avoid a collision as he may not disregard the rights of others or drive roughshod over those approaching the highway in a reasonable manner.

6. Same—Driver on Arterial Highway—Continuing Observation.

Impending danger as revealed or which should have been revealed to a reasonably prudent driver on an arterial highway through his continuous observation determines when his duty of care arises with respect to the driver of a car crossing such highway from an inferior highway, and the arterial driver's post-observation negligence, or lack thereof, is measured by his actions after such point.

7. Same—Negligence—Speed—Observation—Evidence.

Trial court's finding in nonjury case that defendant driver, eastbound on State trunk-line highway, was guilty of negligence in failing to exercise a proper lookout and lacked proper control of his car to enable him to bring it to a stop within the assured clear distance ahead *held*, error, under evidence showing he collided with left rear of plaintiff's northbound car which was partially on the pavement of the through highway and which appeared to be crossing it and defendant's normal 600-foot view of the intersection with which he was familiar had been restricted by presence of van-type truck

parked 2 to 3 feet off pavement 60 to 80 feet west of the intersection, that defendant had commenced braking his car some 300 feet west, and that at least 452 feet would have been required to bring the car to a stop at maximum permissible speed (PA 1949, No 300, § 627, as amended by PA 1957, No 190).

Appeal from Genesee; Roth (Stephen J.), J. Submitted June 8, 1960. (Docket No. 10, Calendar No. 48,504.) Decided September 15, 1960.

Case by Raymond N. Noyce and Frankenmuth Mutual Insurance Company, a Michigan mutual insurance company, against Richard I. Ross and Ira Ross for personal injuries and property damage resulting from automobile collision. Judgments for plaintiffs. Defendants appeal. Reversed and remanded for entry of judgment for defendants.

*Milliken & Magee,* for plaintiffs.

*Robert L. Taylor (Bahls & Mohl,* of counsel), for defendants.

KAVANAGH, J. Defendants appeal from an order denying their motion for new trial. Plaintiff Noyce was granted a judgment against defendants in the sum of $14,000 for his damages, and plaintiff insurance company was allowed a judgment of $850 against defendants for its stipulated damages to the Noyce car.

The action brought by plaintiffs in the Genesee county circuit court grew out of an automobile accident between plaintiff Noyce and defendant Richard I. Ross on March 20, 1958, at the intersection of Vienna road (M-57, a through State highway) and Bray road in Genesee county, Michigan. The case was tried to a court without jury. Plaintiff Noyce

was traveling north on Bray road on a clear day, with dry pavement, intending to cross Vienna road. Defendant Richard I. Ross was proceeding east on Vienna road. Vienna road is a hard surface, black-top road, 20 feet wide, with a marked center line. Bray road is a hard surface, black-top, 2-lane road, A stop sign controlling north-bound traffic was located on the east side of Bray road approximately 51 feet south from the center line of Vienna road. A gasoline station was located on the southwest corner of the intersection and a large, closed van-type truck was parked approximately 60 to 80 feet west of Bray road and 2 to 3 feet south and parallel to the south edge of the paved portion of Vienna road. Vienna road from the intersection of Bray road rises as it extends westward, the crest located approximately 500 feet west of the intersection. At the time of the accident there were 4 large elm trees located along the south side of Vienna road west of the van-type truck. These trees partially blocked the view of drivers as they approached the intersection.

Plaintiff Noyce came to a full stop in the vicinity of the stop sign. He was unable to see up Vienna road to the west because of the trees, the natural terrain and the parked truck. The testimony discloses that he slowly pulled his car ahead until he could see west on Vienna road. Plaintiff Noyce and his passenger testified the Noyce car came to a stop at this point. Defendant Richard I. Ross testified that plaintiff Noyce's car continued to move slowly onto the paved portion of Vienna road. There was varying testimony as to the distance the Noyce car projected onto Vienna road. The trial judge found as a fact that plaintiff Noyce's car was onto the main portion of Vienna road anywhere from 2 to 4 feet. Plaintiff Noyce testified that when he first saw the car owned by defendant Ira Ross and driven by de-

fendant Richard I. Ross, it was between 250 and 300 feet west of the intersection headed in an easterly direction, with the back end swaying to the north. Plaintiff further testified that when he first viewed the defendant's car, it was apparent defendant was applying his brakes. Plaintiff Noyce's passenger first saw defendant's car when it was roughly 200 feet or better from the intersection, and he confirmed plaintiff Noyce's testimony that it was apparent defendant Ross was applying his brakes. Both plaintiff Noyce and his passenger estimated defendant's car was traveling at a speed of 80 miles an hour.

Defendant Richard I. Ross testified he was driving at a speed of 60 to 65 miles per hour; that he first saw plaintiff Noyce's car when he was about 270 feet west of the intersection and its front wheels were on the pavement of Vienna road. Tire marks were left on the pavement by defendant's car beginning approximately 175 feet west of Bray road. At the point of impact, according to plaintiff, the most northerly tire mark of defendant's car was "a good car width" south of the south edge of Vienna road; according to a witness who appeared on the scene within a half minute of the crash, probably 12 feet south. Defendant's automobile struck the left rear wheel of plaintiff Noyce's car. Defendant Richard I. Ross testified that plaintiff's car, after he observed it, continued in motion and did not come to a stop until it was upon the pavement. Defendant's judgment was that plaintiff was continuing to cross Vienna road. Defendant driver turned to the south in an attempt to go behind plaintiff Noyce's car. This position is supported by the following testimony of plaintiff Noyce:

"*Q.* I see. In other words, he has to get around—he didn't leave the road here until after he had passed the truck?

"*A.* Just passed the truck.

"*Q.* He passed the truck, then you say he turned right off?

"*A.* He came out this way (indicating).

"*Q.* As a matter of fact, he was right up here partly on the road, wasn't he, when he hit you?

"*A.* No, sir. Absolutely not. He was a full car from the road.

"*Q.* Full width of the car?

"*A.* Yes.

"*Q.* You are sure he wasn't up there partly on the highway?

"*A.* Yes. Full width of his car."

The trial court in deciding the case said:

"It is the court's conclusion that under the circumstances of the case, the driver approaching Vienna road, that is Noyce driving north on Bray road, did what I would expect a reasonable and prudent person to do; that is, after having stopped at or near the stop sign, to then proceed slowly with caution, placing himself in a position where he might make a full observation of traffic conditions on Vienna road. This, as I view the exhibits, would require that he enter upon the highway, that is Vienna road.

"The testimony is that a driver seated in a car such as Noyce was driving would be some 8 feet or 7 feet from the front of his car. The obstructions which have been testified to and particularly the truck, whose presence near the edge of the south edge of Vienna road, indicate that the driver would have to drive his vehicle upon the highway at least some portion thereof in order to place himself in the position where he might make observation to the left.

"This I believe the driver Noyce did. I believe from the testimony that his car was on the main-

traveled portion of Vienna road to the extent of anywhere from 2 to 4 feet."

The trial court further found:

"The testimony of the engineer indicates that a person 600 feet from the intersection could have made observation of a vehicle 26 feet back from the center line, that's 16 feet off the highway or the main traveled portion of the highway. Ross made no such observation; and as he indicated in his deposition, he may have been looking or might have been looking some place else.

"Both of these drivers were well acquainted with the intersection. They've both testified to that point. Ross, while driving on a through highway, had a duty to anticipate and take into account the possible presence of cross traffic. He knew the intersection was there. He had a further duty to approach it with due caution and circumspection and with a proper lookout, proper observation, and at a speed which would permit him to stop in the assured clear distance ahead.* It's obvious that he made no such observation. I deem that to be the proximate cause of this accident.

"Accordingly, I make a concluding finding to the effect that the driver Noyce was not guilty of any negligence which in any degree contributed to the accident, and that the driver Ross was guilty of negligence in that he failed to maintain a speed which was careful and prudent under the circumstances then and there existing, that he failed to make proper observation and exercise a proper lookout and that he lacked the proper control to bring his car to a stop within the assured clear distance ahead."

In denying defendants' motion for new trial, the trial judge said:

"In my ruling in the case I held that the proximate cause of the accident was really 2 in number,

---

* See PA 1949, No 300, § 627 (CLS 1956, § 257.627), as amended by PA 1957, No 190 (Stat Ann 1957 Cum Supp § 9.2327).

or at least 2, or what in my judgment were the principle factors: Lack of observation which Ross conceded and admitted on both direct and cross examination and what the court considered an inordinate speed just previous to and at the time of the accident."

Defendant-appellants' statement of the questions involved is as follows:

"Was there sufficient evidence for:

"1. The trial court, as trier of the facts, to find that plaintiff was free from negligence in placing himself 2 to 4 feet out on a superior highway in order to make an observation before attempting a crossing of such superior highway?

"Defendant-appellant contends 'No.'

"Was there sufficient evidence for:

"2. The trial court, as trier of the facts, to find that defendant was guilty of negligence in driving at an improper rate of speed under the circumstances of this case, in failing to make a proper lookout, and in not being able to stop within the assured clear distance ahead?

"Defendant-appellant contends 'No.'

"Was there sufficient evidence for:

"3. The trial court, as trier of the facts, to find defendant's speed, improper lookout, and failure to stop within the assured clear distance ahead, to be the proximate cause of the accident?

"Defendant-appellant contends 'No.'

"Was there sufficient evidence for:

"4. The trial court, as trier of the facts, to allow the defendant the benefit of the so-called 'emergency doctrine?'

"Defendant-appellant contends 'Yes.' "

This Court, on appeal, does not ordinarily substitute its judgment on questions of fact in nonjury cases for that of the trial judge. In fact, it cannot

do so unless the evidence clearly preponderates in the other direction, or it becomes apparent that an erroneous principle of law has been applied to the facts.

Once again we are faced with the application of the duty of the driver of an automobile on a favored State highway as he approaches an intersection over which the driver of another vehicle is attempting to cross from an inferior road. Plaintiff Noyce, in this instance, had a duty to stop before entering the State trunk-line highway. CLS 1956, § 257.651 (Stat Ann 1952 Rev § 9.2351). He had a duty, likewise, to yield the right-of-way to traffic lawfully approaching on the favored highway. He had a further duty to continue to yield the right-of-way until he knew that traffic on the main arterial highway was clear before attempting to cross. In the instant case, plaintiff Noyce admits he traveled this road regularly and knew of the difficulty in being able to observe traffic approaching from the west on Vienna road even without the presence of the van-type truck. Despite this knowledge, and despite the presence of the truck blocking his view, he moved 2 to 4 feet out onto the superior highway before seeing defendant's car approaching from the west.

Witness Fellers, a registered civil engineer, testified that, without the van present, a driver approaching Vienna road from the south on Bray road, at a point 26 feet from the center line of Vienna road, could see an approaching car to the west for 600 feet. The reverse was equally true. Unfortunately, unbeknown to defendant driver, the presence of the truck changed the picture the day of the accident. The trial judge, in his decision, in making reference to defendant Richard I. Ross's failure to make proper observation and to maintain a proper lookout, which the trial court deemed to be the proximate cause of

the accident, failed to take into consideration the presence of the van-type truck and its effect on the testimony of the engineer. By this erroneous interpretation of the testimony, the trial court fixed defendant Richard I. Ross's negligence as the proximate cause of the accident.

A serious question arises as to whether a reasonably prudent man would so place himself upon a superior highway in the face of fast-moving traffic without knowing how close traffic might be to such a blind intersection. Both plaintiff Noyce and his passenger testified that defendant Richard I. Ross was braking his car when they first observed him between 200 to 300 feet west of the intersection. They both testified they were stopped, at that time, in the position out on the superior highway. One might speculate as to whether or not this accident would have happened at all had plaintiff Noyce continued on across Vienna road, as defendant driver testified he formed a judgment plaintiff was going to do. The favored driver, defendant Richard I. Ross, testified he was driving within the posted speed limit and had formed a judgment, when he first observed plaintiff Noyce's car pulling up into the intersection ahead of him, that plaintiff was going to continue on across and, consequently, his best chance of avoiding an accident was to turn his car to the right.

Arterial highways and superhighways are designed for the purpose of moving automobile traffic at high rates of speed. This subject has been discussed in *McGuire* v. *Rabaut,* 354 Mich 230, as well as in *Churukian* v. *LaGest,* 357 Mich 173, to which reference is made for a full statement. The difficulty in the instant case, as in other arterial highway versus subordinate highway cases, arises from a definition of the rights and duties of the driver on the arterial highway. The favored driver has a right to

assume that drivers on subordinate highways will yield him the right-of-way; he is not bound to anticipate negligent acts on the part of those approaching the arterial highway. However, he has the duty and obligation to exercise reasonable care for his own protection, and simply because he is on an arterial highway does not mean he can disregard the rights of others or drive roughshod over those approaching the highway in a reasonable manner. He has the continuing duty to exercise reasonable care under the circumstances to avoid a collision. *McGuire* v. *Rabaut, supra; Churukian* v. *LaGest, supra.*

At what point, then, does the principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? This question was answered by Justice SMITH in *McGuire* v. *Rabaut, supra,* at page 236, as follows:

"Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point."

Defendant Richard I. Ross, despite his familiarity with the intersection, had no way of knowing that the van-type truck would be parked parallel with Vienna road and in a position so as to block the view of those entering from Bray road. Traveling on the arterial highway, he was entitled to assume that his approach to Bray road would not be contested by a subordinate driver. This right continued until such time as it became clear to him, or until as a reasonably prudent man considering such pertinent circumstances as the traffic and terrain it should have

been clear to him, that a subordinate driver was going to challenge or obstruct his right of way. At this point his duty to attempt to avoid the impending collision began. Testing this duty with respect to the testimony offered by all witnesses in the instant case, what do we find as to his actions? Both plaintiff Noyce and his passenger testified that at approximately 300 feet from the intersection defendant Richard I. Ross was already applying his brakes and attempting to turn his car to the right off the paved portion of Vienna road so as to give plaintiff Noyce an opportunity to proceed across to a place of safety. Keeping in mind that an engineer testified that even without the presence of the van-type truck, defendant Richard I. Ross would only have been able to see the plaintiff's car some 500 to 600 feet from the intersection, and that the presence of the truck blocked the view as plaintiff Noyce approached the paved portion of Vienna road, considerably reducing defendant driver's view of plaintiff's car, it is surprising to learn that defendant Richard I. Ross, as testified by plaintiff Noyce, was braking the car up to 300 feet away from the intersection. This action on his part, particularly measuring his conduct in light of the emergency presented, which was not of his own making, was the act of a reasonably prudent person. Allowing for reaction time and braking distance at a speed of 65 miles per hour (the maximum legal rate on Vienna road) it would have taken defendant Richard I. Ross 452 feet to stop, computed in accordance with the formula published by the Michigan secretary of State.* How, then, could the trial court conclude that defendant Richard I. Ross failed to make proper observation, to exercise a proper

---

* See booklet (p 41) "What Every Driver Must Know"—James M. Hare, Secretary of State, and footnotes in *McGuire* v. *Rabaut,* 354 Mich 230, 239.

lookout, and to drive at a speed so as to be able to stop in the assured clear distance ahead? We can only conclude that the trial court's misapplication of the engineer's testimony caused him to reach the erroneous conclusion.

There can be no argument that defendant driver saw plaintiff Noyce's car at or near the earliest possible point and made a split-second decision under an emergency situation. His best judgment under these circumstances was that he should attempt to steer his car to a point behind the plaintiff's car so as to avoid what he felt would be a certain accident if he continued in a straight direction. The braking of the car and the driving to the right were the acts of a reasonably prudent man under the circumstances. *Schow* v. *Paugh,* 350 Mich 304, clearly defines the obligation of defendant driver. There Justice KELLY said (p 308):

"We have stated that one who suddenly finds himself in peril without time to consider the best means to avoid impending danger is not guilty of negligence if he fails to adopt what subsequently may appear to have been the better method, unless the emergency is brought about by his own negligence."

We cannot say, on a reading of the entire record, that defendant driver's acts under the "emergency doctrine" constituted negligence that was a proximate cause of the accident. This leaves only the question of possible speed as the proximate cause of the accident. This is the real deficiency in plaintiffs' case. At the statutory maximum speed of 65 miles per hour, the reaction and braking distance of the favored driver would have required 452 feet in which to stop. Since defendant driver had considerably less than this number of feet in which to see plaintiff Noyce's car (and the record discloses he did so observe it and did act diligently) speed could not

have been a factor and was not a proximate cause of the accident. See *McGuire* v. *Rabaut, supra,* and the case cited therein—*Stacy* v. *Knickerbocker Ice Co.,* 84 Wis 618 (54 NW 1091).

We reach the conclusion, after reading the entire record in this case, that the evidence clearly preponderates against the finding of the trial judge and his conclusion that the acts of defendant Richard Ross were negligent acts which were a proximate cause of the accident.

The judgments are reversed, and case remanded for entry of judgment for defendants. Defendants shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.