WEEKS *v.* CONSERVATION DEPARTMENT.

1. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT—EVIDENCE.

Court of Appeals will not reverse the findings of a trial court sitting without a jury unless it is clear that the evidence preponderates in the opposite direction.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Burden of proving plaintiff's contributory negligence is on the defendant (GCR 1963, 111.7).

3. AUTOMOBILES—ARTERIAL HIGHWAY—FAVORED DRIVER.

Favored driver on an arterial highway must take steps to avoid collision with · a subordinate driver when it becomes obvious, or should become obvious to the reasonably prudent arterial driver, that his right-of-way is being contested.

4. SAME—ARTERIAL HIGHWAY—FAVORED DRIVER—EXCESSIVE SPEED.

Plaintiff motorcyclist, overtaking a slow-moving tractor-trailer which made a left turn in front of him without signalling for the turn so that he struck the right rear of the trailer in attempting to avoid it, *held,* to have been contributorily negligent in going so fast at the time the truck slowly began its turn that he could only have passed it on the right, and in not sounding his horn to notify truck driver that he intended to overtake and pass on the left.

5. SAME—MOTORCYCLES—CONTRIBUTORY NEGLIGENCE.

Overtaking motorcyclist approaching a slow-moving tractor-trailer should take some affirmative action to make his presence known.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[2] 38 Am Jur, Negligence § 286.
[3–5] 7 Am Jur 2d, Automobiles and Highway Traffic § 219 *et seq.*
[6] 5 Am Jur 2d, Appeal and Error § 1010.

6. Costs—State Agency.
> No costs are allowed in appeal by plaintiff against State agency for motor vehicle negligence in which court of claims judgment of no cause of action is affirmed.

Appeal from Court of Claims; Peterson (William G.), J., presiding. Submitted Division 3 October 4, 1967, at Grand Rapids. (Docket No. 2,740.) Decided March 18, 1968. Leave to appeal denied May 16, 1968. See 380 Mich 769.

Complaint by John G. Weeks against the Conservation Department of Michigan to recover for injuries sustained when the motorcycle he was riding collided with a tractor-trailer rig owned by defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Vernon D. Kotering, of counsel), for plaintiff.*

*White, Spaniola, Knudsen & Stariha, for defendant.*

Fitzgerald, P. J. Plaintiff-appellant was riding his Honda motorcycle north on a 2-lane highway in Muskegon county on June 30, 1964, with his 8-year-old son as passenger. He collided with a tractor-trailer rig owned by defendant-appellee as the rig was making a left turn from the east shoulder of plaintiff's lane into the parking lot of a store on the west side of the highway.

Much of the dispute in the present case concerns the distance at which plaintiff first observed the rig, the location of the rig prior to its turn, and the distance at which plaintiff first attempted to avoid hit-

ting the rig. Uncontroverted are the facts that defendant's turn signals did not work, that plaintiff was traveling at 55 miles per hour; that he frequently looked in his rearview mirror to watch his wife who was following him in an automobile; that he accelerated slightly with the initial intention of passing the slow-moving rig on the left; that the rig was traveling at 5 miles an hour or less; that the rig was 36 feet 5 inches long and the highway 22 feet wide; that plaintiff attempted to swerve to pass the rig on the right shoulder when he discovered his peril, and that plaintiff struck the rig on the right rear ramp with the motorcycle landing in the center of the highway.

Plaintiff suffered serious injury and commenced action in the court of claims, the case being heard on August 22 and 23 of 1966. Defendant admitted negligence in its closing argument and alleged contributory negligence of plaintiff as an affirmative defense. The court agreed and entered a judgment of no cause of action in favor of defendant, with plaintiff filing a claim of appeal to this Court.

We are asked to consider whether there was sufficient evidence presented for the proper finding of contributory negligence on the part of the plaintiff.

At the outset, it must be remembered that this Court does not reverse the findings of a trial court sitting without a jury unless it is clear that the evidence preponderates in the opposite direction. See GCR 1963, 517.1; also see *Shaw* v. *Wiegartz* (1965), 1 Mich App 271; *Baxter Realty Co.* v. *Manning* (1966), 3 Mich App 409; *St. Paul Fire & Marine Insurance Company* v. *Michigan Consolidated Gas Company* (1966), 4 Mich App 56. In the present case, the trial court was faced with the determination of the distance at which plaintiff first saw defendant's rig and the distance at which plaintiff first

attempted to avoid hitting the turning rig, and discusses this issue as follows:

"The exact location of the motorcycle at the moment Mr. Whittaker [the driver of the rig] commenced his turn is uncertain. The court has attempted to determine where it was, assuming Mr. Whittaker's measurement of the distance the automobile [driven by plaintiff's wife behind the motorcycle] was when he observed it was accurate, namely a quarter of a mile, the motorcycle could be placed anywhere between the car and the trailer, depending upon what testimony you look at.

"Mr. Dixon, who was following, driving the Weeks' automobile, testified that he was following the motorcycle by half a block to 500 feet behind the motorcycle. This would place the motorcycle from 750, 700 to 1,000 or 1,100 feet from the truck. The trouble was Mr. Dixon also gave a statement about which he was questioned on cross-examination in which he indicated he was following the motorcycle by 1,200 to 1,500 feet, which would have put the motorcycle right at the truck when the truck commenced to turn. I am satisfied that that isn't true. But he did indicate his uncertainty by this cross-examination, and at one point cross-examination indicated that he may have been only a half a block behind the motorcycle as he followed it.

"Mr. Weeks' testimony was that he saw the conservation department rig some 1,500 feet ahead of him. As I view his testimony it was that the rig was on the pavement when he then saw it. Now he testified on direct examination that when he first saw the trailer it had its two wheels on the pavement and two wheels on the shoulder. That he judged it to be 1500 feet ahead of him, moving at 15 miles an hour. That he observed there were five feet of clear space between the left edge of the trailer and the center line; that when he was 400 to 500 feet from the trailer he believed the trailer to be slowing. Seeing no brake light he assumed the unit was coasting

to a stop; that going at a rate of 55 miles an hour he accelerated, 3, 4 or 5 miles, intending to pass the truck near the center line without leaving his lane. It is clear that he did not sound his horn or any audible signal of intention to pass. He testified that the truck then began to turn left without any signal when he was within 100 to 150 feet away; that he closed his throttle, that he braked, and headed toward the right-hand shoulder, attempting to clear the trailer behind it, that he was not successful in doing so.   *   *   *

"On cross-examination his testimony indicated that he may have been only 75 to 100 feet behind the trailer when he started his speed-up, established to the court's satisfaction that the trailer was observed by him to have been entirely on the pavement when he saw it, although at the extreme right-hand side, and that he never did see the truck when it was wholly on the shoulder of the road.   *   *   *

"The court is satisfied that the trailer was, in fact, largely across the highway, and that it had in fact proceeded more than half way in the course of completing its turn, and that the right-hand, or easterly one half of the northbound lane was open at the time of impact.   *   *   *

"Considering its speed at less than 5 miles an hour, 12 or more times less than the rate of speed of the motorcycle, it is apparent to the court Mr. Weeks must necessarily have seen the tractor entering into and going across the highway at a point some distance back from it, had he been looking, and paying close attention to what was there to be seen; and that had he paid sufficient attention, had he made a proper observation ahead of him, he would have seen the obstruction of the highway by the truck sufficiently in time to have permitted him to slow, to clear the trailer to the rear, and to have passed the trailer on the right.

"I really believe that when Mr. Weeks said he saw this tractor 1,500 feet away that it was already beginning its turning operation and that his attention

was distracted or at least was not focused adequately upon the combination tractor and trailer to observe what was happening. Relative rates of speed, the place at which this collision occurred just don't make it possible for the court to arrive at any other conclusion. And I simply find it impossible to believe that this vehicle commenced its turn at a point when Mr. Weeks was only 75 to 150 feet to the rear and still have the collision occur in the manner in which it did."

We can reasonably conclude that there was ample evidence to support a finding of contributory negligence by the trial court and that the court was fully aware of and considered all of the evidence before it. We now consider whether the interpretation of the evidence was, in fact, correct.

In his brief to this Court, plaintiff argues that the burden of proving contributory negligence rests with the defendant and we fully concur. GCR 1963, 111.7. Plaintiff then contends that, as a favored driver on an arterial highway, he only had the duty and obligation of exercising reasonable care for his own protection, referring to the holding in the case of *Noyce* v. *Ross* (1960), 360 Mich 668. The Supreme Court in that case, after discussing the duty of reasonable care to be placed on a favored driver when he is faced with a subordinate driver, quotes from *McGuire* v. *Rabaut* (1958), 354 Mich 230, 236, stating that the duty comes into operation:

"Only at that point when his continuing observations [which he must make, despite the fact that he is on an arterial highway] reveal, or should reveal to the reasonably prudent man an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point."

The *Noyce Case* and the others cited to this Court by plaintiff deal with intersection cases and the duty of a favored driver on a high speed or arterial highway. *Churukian* v. *LaGest* (1959), 357 Mich 173. It may be contended that plaintiff had a duty in the present case which was somewhat greater than that of an arterial driver's duty in the intersection cases, as it is clear that it was daylight, the road ahead of plaintiff was empty of other traffic, flat and dry, and the plaintiff first saw the rig in his own lane from a distance of 1,000 to 1,500 feet. It is true that we require a driver to take steps to avoid collision with a subordinate driver (p 183): "Only * * * when it becomes obvious, or should become obvious to the reasonably prudent arterial driver, that his right-of-way is, in truth, being contested." *Churukian* v. *LaGest, supra.* However, the favored driver is not so favored by the law that he may give only scant and cursory attention to subordinate drivers. *Noyce* v. *Ross, supra.* Plaintiff also cites this Court to an observation by Justice BLACK in the case of *Cousino* v. *Briskey* (1962), 366 Mich 1, 20, first quoting from *Ware* v. *Nelson* (1958), 351 Mich 390, 396, wherein it is stated:

" 'If our test of contributory negligence was whether or not plaintiff had done all that he conceivably could have done, or even all that, in retrospect, it is obvious he should have done for his own safety, no negligence action could ever be maintained.'

The Court then adds (p 20):

"I wonder how many motorists, even expert and ultracareful ones like high court judges, do 'decelerate, even slightly' as they proceed on favored ways toward and into each blind or partly blind intersection."

Plaintiff was not faced with any situation of blindness when he approached defendant's rig, unlike the intersection cases, and these cases are distinguished by the *Noyce* court at p 677. Plaintiff, acting as a reasonably prudent and observant driver, should not have been traveling so fast at the time the truck slowly began its turn that he could only have passed it on the right. We also note that plaintiff did not signal his initial intention to pass a slow moving vehicle on the left, and quote from 2 Blashfield, Cyclopedia of Automotive Law and Practice, § 945, Duty to Guard Against Turning Movements of Front Car:

"[A motorist] is not required to anticipate that the other vehicle will turn suddenly to the left without giving a proper signal. Thus his failure to stop in time to avoid a collision under such circumstances does not amount to contributory negligence.

"A contrary result may be expected  *  *  * where the driver of the overtaking automobile has attempted to pass without sounding his horn." Citing the case of *Jacoby* v. *Schafsnitz* (1935), 270 Mich 515.

It is true that this holding in the *Jacoby Case* was based on CL 1929, § 4706. That section was repealed by an act* having no absolute statutory requirement that an overtaking vehicle always signal his intention to pass, but we find that the reasonably prudent motorcycle driver, upon observing and approaching a slow moving tractor-trailer, should take some affirmative action to make his presence known.

We hold that the trial court did not err in any aspect of this case, and that its detailed considerations of all the circumstances properly led to a conclusion which will not be upset on this appeal. It

---

* PA 1949, No 300, § 636 (CLS 1961, § 257.636 [Stat Ann 1960 Rev § 9.2336]).

was proper to find from the evidence that plaintiff was guilty of not exercising the duty and care in observation required of a reasonably prudent driver. The evidence certainly does not clearly preponderate in the opposite direction, and we agree that plaintiff's failure to observe what was there to be seen and avoided was a proximate cause of his injuries.

Affirmed. No costs, a governmental agency being involved.

BURNS and HOLBROOK, JJ., concurred.

