## WINEKOFF v. POSPISIL

1. EVIDENCE—STOPPING DISTANCES—CHART OF STOPPING DISTANCE—AUTOMOBILES—DUE CARE—CAUSATION.

    Widely published and pretty well understood stopping distances, such as those in the chart headed "Stopping Distance—Passenger Cars" which is a part of the pamphlet entitled "What Every Driver Must Know", widely distributed by the Michigan Secretary of State, have some value as evidence, provided the proof preceding their admission discloses a fair and relevant reason for submitting them to the jury as an aid to the solution of the ever-present issues of due care and causation.

2. APPEAL AND ERROR—SAVING REVIEWABLE QUESTION—EVIDENCE—CHART OF STOPPING DISTANCE.

    Plaintiff failed to raise and save the reviewable question whether a chart headed "Stopping Distance—Passenger Cars" was admissible where there was no objection to admission of the chart, no motion to strike the chart, no request for summary or general instructions that the jury disregard the chart, or for restriction of its consideration by the jury, each counsel employed the chart in forensic effort during closing jury argument, and no objection was made to the instructions or when the chart was delivered to the jury in the jury room.

3. EVIDENCE—JUDICIAL NOTICE—RELEVANCY TO ISSUE.

    The right to take judicial notice of some thing, or occurrence, or record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 405, 893, 987.
[2] 29 Am Jur 2d, Evidence § 494.
    29 Am Jur 2d, Evidence § 1103.
    53 Am Jur, Trial §§ 671, 824–835.
[3, 5, 7, 8] 29 Am Jur 2d, Evidence §§ 14–26.
[8] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 891–895.

noticeable matter is admissible in evidence; it must in addition be relevant as tending to prove or disprove the pleaded issue.

4. EVIDENCE—CHART OF STOPPING DISTANCE—AUTOMOBILES—RELEVANCY—NEGLIGENCE—EMERGENCY.

A chart entitled "Stopping Distance—Passenger Cars" was relevant where its thrust, of reaction, action and the result of both, bore upon the very core of that which the jury was instructed to decide, that is, whether an emergency which confronted defendant, when a child ran into the traveled portion of the roadway, was or was not due to actionable negligence as charged against her; thus, where the time and distance required to slow her car or to take evasive action in effort to avoid hitting the child were pertinent to the issue and all necessary physical circumstances were precedently shown, it was proper to let the jury consider the chart.

5. EVIDENCE—JUDICIAL NOTICE.

Judicially noticeable facts, matters and principles have been formally received in evidence, or have been instructed to the jury for its consideration without formal admission, or have been utilized *sua sponte* by the Court.

6. EVIDENCE — JUDICIAL NOTICE — AUTOMOBILES — REACTION TIME EVASIVE ACTION—NEGLIGENCE.

The Michigan Supreme Court notices judicially, that it takes reaction time plus additional time for a motorist to take evasive action where his automobile is traveling at a lawful rate of speed and an unexpected emergency is occasioned by the sudden appearance of a child running into or toward its path; and it is usually for the jury to decide whether, upon the whole proof, what the driver did or did not do amounted to actionable negligence.

7. EVIDENCE—JUDICIAL NOTICE—CHART OF STOPPING DISTANCE—AUTHENTICITY.

Judicial notice is a substitute for proof; therefore, the pamphlet "What Every Driver Must Know", which was distributed publicly by the Secretary of State, and the authenticity of the chart of stopping distances appearing therein could be judicially noticed without formal proof.

8. EVIDENCE—JUDICIAL NOTICE—CHART OF STOPPING DISTANCE—OB-
JECTIONS TO ADMISSION. .

  The contents of a pamphlet such as "What Every Driver Must
  Know", which was distributed publicly by the Secretary of
  State, will not be judicially noticed as against an objection
  that intervening changes of design or construction have ren-
  dered the chart misleading which changes the objector offers
  and does support.

Appeal from Court of Appeals, Division 2, Quinn,
P. J., and T. G. Kavanagh, and Corkin, JJ., revers-
ing Monroe, William J. Weipert, Jr., J. Submitted
May 5, 1970. (No. 8 April Term 1970, Docket No.
52,244.) Decided December 30, 1970.

13 Mich App 293 reversed.

Complaint by Robert A. Winekoff, administrator
of the estate of Rickey Lee Winekoff, deceased,
against Mary E. Pospisil, for the wrongful death
of Rickey Lee Winekoff as the result of an automo-
bile-pedestrian collision. Verdict and judgment for
defendant. Plaintiff appealed to the Court of Ap-
peals. Reversed and remanded. Defendant ap-
peals. Reversed and remanded to circuit court.

*Jerry P. D'Avanzo,* for plaintiff.

*Ready, Braunlich & Ready,* for defendant.

PER CURIAM. Plaintiff's appeal to the Court of
Appeals posed but one question; whether the evi-
dentiary admission during trial of this suit for neg-
ligence, of a chart headed "Stopping Distance—
Passenger Cars," constituted reversible error. See
the recent annotation, 9 ALR3d 976, "Admissibility
in Evidence, in Automobile Negligence Action, of

Charts Showing Braking Distance, Reaction Times, Etc."

The chart was a part of our Secretary of State's widely distributed publication, in pamphlet form, entitled "What Every Driver Must Know." Division 2 ruled that such admission was prejudicial (13 Mich App 293). We granted review (382 Mich 752) to consider possible conflict of Division 2's ruling with that which was done judicially in *McGuire* v. *Rabaut* (1958), 354 Mich 230, 235, 239, and again in *Noyce* v. *Ross* (1960), 360 Mich 668, 679. Therein this Court took judicial notice of relevantly applicable portions of the same and corresponding publications and applied such portions to the respective decisions made.

According to Division 2 the posed question arose this way (p 295):

"Before offering the pamphlet in evidence, defendant's counsel while questioning the defendant (referring to the chart) stated that the chart indicated that at a speed of 45 miles per hour one's reaction time would involve 50 feet of distance traveled. He also asked her if she understood that at 45 miles per hour she would travel 66 feet in a second, and that the stopping distance after a motor vehicle operator becomes aware of something that causes him to want to stop, if traveling at the rate of 45 miles per hour, is a minimum of 186 feet. In answering, the defendant indicated that she hadn't known this, but did now that counsel had told her. The chart was then offered in evidence, and over objection that no proper foundation for its admission had been made out, it was admitted.

"During the colloquy between counsel and the court concerning the admissibility of the chart, the court said, 'The jury is cautioned that the application to this case, well, depends, of course, upon the facts of this case as the jury finds them to be from the testimony.'

"The defense referred to the chart in closing argument and it was taken to the jury room when they retired to deliberate."

For automobile negligence cases we are too firmly committed to and satisfied with the principle of due judicial notice, applied as in *McGuire* and *Noyce,* to recede or reconsider now in the dubious light of such new annotation, published as it was in 1966. Since *Noyce* our steady experience with automobile negligence cases suggests that these widely published and pretty well understood stopping distances have some value as evidence, provided the proof preceding their admission discloses a fair and relevant reason for submitting them to the jury as an aid to solution of the ever-present issues of due care and causation.

Upon and from that beginning postulate we come to the manner in which the stated question arose initially in this case, and then failed of preservation.

The defendant driver was called to the stand by plaintiff for legally permitted cross-examination. Upon correspondingly permitted cross-examination by her own counsel, Mrs. Pospisil's attention was called to the pamphlet aforesaid. An objection to the question and some little colloquy of court and counsel followed. The trialogue ended:

*"The Court:* We may make reference to these then. The jury is cautioned that the application to this case, well, depends, of course, upon the facts of this case as the jury finds them to be from the testimony."

Later came the formal offer, the discussion and the court's ruling:

*"Mr. Ready:* If the Court please, Exhibit 1, Defendant's Exhibit 1, is offered in evidence.

"*The Court:* Did you have some objection to it?

"*Mr. D'Avanzo:* Well, if the Court please, I had previously made an objection to the line of questioning and I'll renew the objection for the record at this time, but then with respect to the particular exhibit, it would seem to me that out of fairness Mr. Ready should disclose by the tables and by the exhibit what the stopping times and reaction times are for motor vehicles traveling at the legal rate of speed on that highway, which I believe would be sixty-five miles an hour.

"*Mr. Ready:* I think, if the Court please, this is simply a matter of cross-examination. If counsel wants to go into it, he can.

"*The Court:* That, of course, can be gone into on your examination. I'll not limit you from doing that, Mr. D'Avanzo.

"The exhibit will be received, Defendant's Exhibit 1."

There was no objection to admission of the chart, distinguished from objection to the preliminary question. Counsel was apparently satisfied with the judge's quoted method of receiving it. His ensuing action and inaction suggests no other conclusion. No motion to strike the chart, during or following further cross-examination of defendant, was offered. No request for summary or general instruction that the jury disregard the chart, or for further restriction of its consideration by the jury, was made. Then, during jury argument for the defense and closing jury argument for the plaintiff, each counsel employed the chart in forensic effort.

Finally, at the close of jury instruction, the trial judge summoned counsel to the bench for what the record terms a "discussion off the record." Thereupon the judge announced, "Let the record show the court has conferred with counsel concerning the charge given." Hence no question of erroneous jury

instruction, or of failure to instruct per request, was raised and saved. See GCR 1963, 516.2.

Complaint is made that the chart was delivered, with other exhibits, to the jury in the jury room. No objection on that score was made. We cannot therefore consider this particular claim of prejudice. *Silverstone* v. *London Assurance Corporation* (1915), 187 Mich 333, 342, 343.

Our conclusion is that plaintiff failed to raise and save the reviewable question, and that his concern with respect to the chart did not arise until after the jury had rendered its verdict. There is more to be said, however, about this matter of judicial notice as done in *McGuire* and *Noyce*. We have decided to say it.

The right to take judicial notice of some thing, or occurrence, or record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially noticeable matter is *admissible* in evidence. It must in addition be *relevant* as tending to prove or disprove the pleaded issue. The chart was so *relevant*, upon this record. Its thrust, of reaction, action and the result of both, bore upon the very core of that which the jury was instructed to decide, that is, whether the emergency which confronted Mrs. Pospisil, when the child ran into the traveled portion of the roadway, was or was not due to actionable negligence as charged against her. The time and distance required to slow her car, or to take evasive action in effort to avoid hitting the child, were pertinent to the issue. All necessary physical circumstances having been precedently shown, it was proper to let the jury consider the chart.

In our books there are fair analogies and parallel instances where judicially noticeable facts, matters and principles have been formally received in evi-

dence, or have been instructed to the jury for its consideration without formal admission, or have been utilized *sua sponte* by the Court.

*McGuire* and *Noyce* are examples of the latter. So is the early grade crossing case of *Lake Shore & M. S. R. Co.* v. *Miller* (1872), 25 Mich 273, 291, 292. *Denman* v. *Johnston* (1891), 85 Mich 387, 398, 399, which over the years has been followed in personal injury and wrongful death cases whereby the proof mortality tables are made relevant,* is an example of the two others.

The parallelism of judicial notice as employed in the *Lake Shore R. Co.* case, and of that we employ here, is striking. Although a century will shortly elapse since the *Lake Shore* case appeared in our reports, the matter noticed and applied there was that powered heavy vehicles traveling at lawful rates of speed cannot be so propelled or driven as to insure the safety of those who, by the nature of things, are easily able to stay out of the way of such vehicles until the latter have safely passed on. Justice CHRISTIANCY began, for the Court (pp 291, 292):

"The laws of nature and of the human mind, at least such of them as are obvious to the common apprehension of mankind, as well as the more obvious dictates of common sense and principles of human action—which are assumed as truths in any process of reasoning by the mass of sane minds—constitute a part of the laws of the land, and may, and must, be assumed by the court, without being found by a jury; indeed, the finding of a jury, which should clearly disregard them, should itself be disregarded by the court. In other words, courts are

---

* They are *not* relevant when without dispute it is shown that the injured plaintiff or the deceased person was not at time of injury "an ordinarily healthy person." *Norris* v. *Detroit United Railway* (1916), 193 Mich 578, 581–583.

bound judicially to know and apply such laws and principles as part of the law of the land."

Then he went on to observe that courts are bound to know and judicially recognize that locomotives and heavy trains cannot, "owing to their momentum when in motion, be suddenly stopped in their course, or turn to the right or left, like a foot passenger, or a team and wagon upon an ordinary highway, * * * ." The same is correspondingly true of the modern motor car when, if it is traveling at a lawful rate of speed under the presented circumstances, an unexpected emergency is occasioned say by the sudden appearance of a child running into or toward its path. We notice judicially, then, that it takes reaction time plus additional time for a motorist to take evasive action in a case as here, and observe that it is usually for the jury to decide whether, upon the whole proof, what the driver did or did not do amounted to actionable negligence.

Jones tells us, and we agree (1 Jones, Blue Book of Evidence [Bancroft-Whitney edition of 1913], p 509, § 105a [104]):

*"Principle on which based.*—A little inquiry into the foundation which carries so useful a structure, and so great a time-saver in our process of legal examinations, cannot fail to be of ultimate service. Judicial notice is based upon very obvious reasons of convenience and expediency; and the wisdom of dispensing with proof of matters within the common knowledge of everyone has never been questioned. This is the principle upon which the doctrine of judicial notice rests; convenience and expediency, and the saving of the time, trouble and expense which would be lost in establishing in the ordinary way facts which do not admit of contradiction."

Judicial notice is, then, a substitute for proof. In the present case, the pamphlet "What Every Driver

Must Know" was distributed publicly by the Secretary of State and the authenticity of the chart appearing therein could be judicially noticed without formal proof. This does not mean that the contents of such a pamphlet *must* be judicially noticed as against a properly supported objection to such action of the court. For instance, if the objection is that intervening changes of design or construction, say of cars, tires, or pavement surfaces, have rendered the chart misleading, which changes the objector offers to support and does support, then the objection would be good and the court should proceed accordingly. In this case there was no such objection, supported or otherwise.

For reasons given above it is ruled that the trial judge did not err as charged. The judgment of the Court of Appeals is therefore reversed and the record is remanded to circuit for confirmation of the judgment entered upon the jury's verdict. Costs of all courts to defendant.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, and ADAMS, JJ., concurred.

KELLY and T. G. KAVANAGH, JJ., did not sit in this case.