## JOHNSON v KOSKI

### OPINION OF THE COURT

1. EVIDENCE—AUTOMOBILES—NEGLIGENCE—STOPPING DISTANCES—
   CHARTS—ABNORMAL CONDITIONS—JUDICIAL NOTICE—RELE-
   VANCE.

   The admission in an automobile negligence action of a chart
   distributed by the Secretary of State containing stopping dis-
   tances for passenger cars was erroneous where, after proper
   and timely objection, the proofs preceding its admission did not
   disclose a fair and relevant reason for submitting it, the road
   condition at issue was not the normalized situation with which
   the chart dealt, and the question of absolute speed was not *a
   fortiori* relevant, as the primary focus was upon whether de-
   fendant was exercising due care and driving in such a manner
   as to be able to stop within an assured clear distance ahead
   under existing conditions; the right to take judicial notice of
   some thing, occurrence, record, or other fact which may be
   considered does not mean that any such judicially noticeable
   matter is admissible in evidence where it is not relevant as
   tending to prove or disprove the pleaded issue.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INFANTS—EVIDENCE OF
   CONDUCT—AUTOMOBILES.

   An infant under the age of seven years cannot be guilty of
   contributory negligence as a matter of law; and it was erro-
   neous, confusing and prejudicial to a six-year-old plaintiff's
   automobile negligence cause of action to allow testimony of and
   continued references by defense counsel to the plaintiff's con-
   duct, which was relevant and probative only on the issue of his
   negligence.

### CONCURRENCE BY ALLEN, J.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INFANTS—AUTOMOBILES
   —DRIVER'S NEGLIGENCE—INSTRUCTIONS TO JURY.

   *Cross-examination and closing arguments concerning the conduct*

---

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 29 Am Jur 2d, Evidence §§ 249, 251–257.

*of a child under the age of seven years in an automobile
negligence action, although not proper to show the plaintiff
child's contributory negligence, are proper when relevant to the
determination of the defendant driver's negligence provided
that a clear and precise instruction to the jury that they should
consider the child's conduct only in reference to the issue of the
driver's negligence is given; the full facts of how the accident
occurred, what the driver saw, and what the child was doing
should always be presented to the jury.*

Appeal from Baraga, Stephen D. Condon, J.
Submitted May 16, 1975, at Marquette. (Docket
No. 19904.) Decided August 11, 1975.

Complaint by Gary R. Johnson, individually and
as next friend of Wade G. Johnson, a minor,
against Gordon M. Koski for damages resulting
from an automobile-pedestrian collision. Judgment
for defendant. Plaintiffs appeal. Reversed and re-
manded.

*Phillip L. Kukkonen,* for plaintiffs.

*LaBine, Vairo & Mechlin,* for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and
D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, P. J. At approximately 11 a.m.
on February 6, 1972, defendant, Gordon M. Koski,
was driving a Scout, a jeep-type vehicle, on Spruce
Street in the Village of L'Anse, Michigan. He had
just had the brakes of the vehicle repaired the
previous day. Mr. Koski was proceeding in second
gear at an estimated speed of 15 to 20 miles per
hour, when he saw two children run across the
street. These children were the sisters of the mi-
nor plaintiff herein. Defendant described what
followed in this fashion:

"Well, I got part way up the little hill and I saw the two kids run across so I was watching them when they got to the snowbank in case they'd turn around or do whatever kids do. And when I took my eyes off of them and went back onto the road, I saw Wade coming from the side. And that was all in a matter of just a second, then I put the brakes on right away but still hit him."

The then six-year-old Wade Gary Johnson had come from behind a car or trailer when he was first seen by defendant Koski. It was disputed and is unclear as to whether the child came onto the roadway forward, as he testified, or backwards pulling his sled as was variously implied. After Mr. Koski struck the boy with his vehicle, he took the injured child to the hospital for treatment. The child had a broken left femur which required eight weeks of hospitalization in traction to heal.

A state police trooper testified in pertinent part that the street was "quite an upgrade hill", and "was very snow covered, icy and extremely slippery". He further stated that he measured skid marks of 24 feet.

After two days of trial, the jury returned a verdict of no cause of action for defendant. The plaintiffs filed a motion for a new trial which was denied, and plaintiffs appeal therefrom.

Defendant filed a motion to affirm herein, pursuant to GCR 1963, 817.5(3), which was denied. Plaintiffs have here made two assertions of error, one of which (relating to the presence of uniformed police officers in the courtroom) is so unsubstantial as to require no discussion. The other issue taken in the context of the entire trial, requires a new trial.

The following occurred:

*Mr. Tomasi (defendant's attorney):* Your Honor, at

this time I have what has been marked as defendant's
proposed exhibit #1, a document purporting to be
published by James M. Harris, [Hare] Secretary of
State, State of Michigan, entitled "What Every Driver
Must Know," containing a stopping distance chart for
passenger cars. At this time I would move that this be
introduced into evidence as defendant's exhibit 1. (De-
fendant's exhibit 1 offered in evidence.)

"*Mr. Kukkonen (plaintiffs' attorney):* I would object to
it, your Honor, on the grounds that, number one,
Trooper Hoopingarner testified that he couldn't—even
after being trained in this, couldn't begin to guess what
the stopping distances would be because there were icy
conditions and snowy conditions. Also, there is testi-
mony that we have an uphill grade. I don't know tests
—what circumstances these tests were made under.
Also, from watching t.v. it seems that every car tire is
no better or worse than the other in braking action. I
think that this pamphlet doesn't qualify if it wasn't
taken at the scene at the time.

"*The Court:* What's your foundation for laying this,
Mr.—or what foundation have you laid for its introduc-
tion, Mr. Tomasi?

"*Mr. Tomasi:* The fact that it is published by the
Secretary of State, your Honor, or purports to be.

"*The Court:* Where is its materiality here?

"*Mr. Tomasi:* Its materiality would come in, your
Honor, in the fact that Trooper Hoopingarner stated
that he measured skid marks on an icy surface or snow
covered surface of 24 feet. The stopping distances—and
I believe the chart itself states it's with a perfect
coefficient to friction, which would be on a blacktop
surface, so the only way it could work would be to
plaintiff's advantage—would tend to signify and tend to
indicate the speed at which the defendant was traveling
at the time based upon the stopping distances.

"*The Court:* The exhibit will be received and the jury
will be instructed that they are to give the exhibit the
weight that they feel that it's entitled to receive based
upon all of the circumstances and evidence that has
been presented in this case. I would assume, gentlemen,
that the only portion of the exhibit that will be intro-

duced would be the chart itself, the other portion of the pamphlet will be removed and just the—

"*Mr. Tomasi:* That is correct, your Honor.

"*The Court:* All right. On that basis, it'll be received. (Defendant's exhibit #1 received in evidence.)"

Plaintiffs argue that admission of the subject chart was erroneous. What direction we have is found in *Winekoff v Pospisil,* 384 Mich 260, 264, 266, 268–269; 181 NW2d 897, 898, 899–900, 901 (1970), relied upon by the parties herein, where the Supreme Court wrote, in pertinent parts:

"For automobile negligence cases we are too firmly committed to and satisfied with the principle of due judicial notice, applied in *McGuire [McGuire v Rabaut,* 354 Mich 230; 92 NW2d 299 (1958)] and *Noyce [Noyce v Ross,* 360 Mich 668; 104 NW2d 736 (1960)], to recede or reconsider now in the dubious light of such new annotation,[1] published as it was in 1966. Since *Noyce* our steady experience with automobile negligence cases suggests that these widely published and pretty well understood stopping distances *have some value as evidence, provided the proof preceding their admission discloses a fair and relevant reason for submitting them to the jury as an aid to solution of the ever-present issues of due care and causation.*

\* \* \*

"The right to take judicial notice of some thing, or occurrence, or record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially noticeable matter is *admissible* [emphasis in original] in evidence. It must in addition be *relevant* [emphasis in original] as tending to prove or disprove the pleaded issue. *The chart was so relevant upon this record.* Its thrust, of reaction, action and the result of both, bore upon the very core of that which the jury was instructed to decide, that is, whether the emergency which confronted Mrs. Pospisil, when the

---

[1] Anno, *Admissibility in evidence, in automobile negligence action, of charts showing braking distance, reaction times, etc.,* 9 ALR3d 976.

child ran into the traveled portion of the roadway, was or was not due to actionable negligence as charged against her. The time and distance required to slow her car, or to take evasive action in effort to avoid hitting the child, were pertinent to the issue. All necessary physical circumstances having been precedently shown, it was proper to let the jury consider the chart.

⸫        *  *  *

"Judicial notice is, then, a substitute for proof. In the present case, the pamphlet "What Every Driver Must Know" was distributed publicly by the Secretary of State and the authenticity of the chart appearing therein could be judicially noticed without formal proof. This does not mean that the contents of such a pamphlet *must* [emphasis in original] be judicially noticed as against a properly supported objection to such action of the court. For instance, if the objection is that intervening changes of design or construction, say of cars, tires, or pavement surfaces, have rendered the chart misleading, which changes the objector offers to support and does support, then the objection would be good and the court should proceed accordingly. In this case there was no such objection, supported or otherwise." (Emphasis supplied.) (Footnote added.)

Upon the record before us we determine that the chart was not properly relevant and was not admissible. The road condition was certainly not that normalized situation with which the chart deals. We do not know how far, if any, defendant was on ice trying to stop, without making skid marks. By comparison, the following pertinent colloquy occurred between the state trooper and defense counsel:

"*Q.* And have you had any training, Trooper, in the estimation of speeds from stopping distances or skid marks?

"*A.* We had some training in that. However, there is a—it's a very difficult factor to be figured out. That

necessarily wouldn't apply to this case because the case where I learned was mainly on a dry, bare road, and we have icy conditions here and I would have no idea.

*"Q.* Could you, Trooper, give me a reasonably accurate estimate as to how fast a vehicle which skidded 24 feet on blacktop would be traveling?

*"A.* No, sir, I couldn't.

*"Q.* You couldn't?

*"A.* No, sir."

Further, any question of absolute speed was not *a fortiori* relevant as the primary focus was upon whether defendant was exercising due care, *e.g.,* kept a proper lookout and drove in such a manner as to be able to stop within the assured clear distance ahead *under the conditions existing at the time of the accident.* Thus, the admission of the chart, in this case, was erroneous; however, we point to other errors present in the case which also mandate reversal.

The defendant had affirmatively alleged contributory negligence on the part of the six-year-old plaintiff. Plaintiffs' counsel moved to strike this defense, which was granted. Defense counsel cross-examined the then eight-year-old plaintiff, in pertinent part:

*"Q.* Do you remember if your teacher ever told you anything about crossing streets?

*"A.* No.

*"Q.* She didn't. Did your parents ever tell you anything about how you should cross streets?

*"A.* Yes.

*"Q.* And, what did they tell you?

*"A.* To look both ways.

*"Q.* To look both ways. On the day that the accident occurred, did you forget to look both ways?

*"A.* Yes.

Further, counsel for the defendant cross-examined the mother, *inter alia,* thusly:

"*Q.* Did you also indicate to the officer, Mrs. Johnson, that the accident was not Mr. Koski's fault?

"*A.* I—I—I might have, I don't know.

"*Q.* You don't recall.

"*A.* I wasn't going to sit there and say, 'Well, it's all his fault.' I mean, he was standing right there. I—

"*Q.* Did you talk to Mr. Koski after the accident?

"*A.* Yes.

"*Q.* Did you discuss the accident with him?

"*A.* Yes.

"*Q.* And you indicated to him what you saw?

"*A.* Yes, I told him that Wade was walking backward —I remember saying that.

"*Q.* Well, you told—

"*A.* And I remember telling him that Wade flew in the air and how glad I was that he—

"*Q.* You told him that Wade was walking backward.

"*A.* Yes, but I didn't tell him that Wade had turned around, because I—you know, I just said he was walking backward and I know he told—

"*Q.* So that when you saw Wade he was walking backward, or he had turned around—

"*A.* He had turned around—he had.

"*Q.* So he was walking backward when you saw him.

"*A.* He took three steps backward and then he turned around. I saw him turn around.

"*Q.* But you did admit that Wade was walking backward at the time—

"*A.* But he wasn't past that car when he walked— before—when he turned around.

"*Q.* But he was walking backward.

"*A.* He was walking backward.

"*Q.* And you indicated that to Mr. Koski.

"*A.* Yes.

"*Q.* And did you also indicate to Mr. Koski that there was nothing he could have done to have avoided the accident?

"*A.* (No response)

"*Q.* You don't recall?

"*A.* I don't—I don't know. I—I—I think I probably at that point felt accidents do happen. I mean, I know they happen. But I'm not the type to sit there and say, well, you know—I don't know."

Defense counsel made continued reference to the child's coming on to the roadway backwards, including reference during his closing argument, indicating contributory negligence on the part of the child.

Whether the child looked both ways and came on to the roadway forward or backward was only relevant and probative on the issue of the child's negligence. This was erroneous, confusing and prejudicial to the minor plaintiff's cause of action in that an infant under the age of seven years cannot be guilty of contributory negligence as a matter of law. See *Baker v Alt,* 374 Mich 492; 132 NW2d 614 (1965), and MSJI 11.03.

The foregoing factors, in coalescence, have denied plaintiffs a fair hearing of the case and mandate that a new trial be had. Accordingly, the trial court's denial of the motion for a new trial, pursuant to GCR 1963. 527.1, was error.

Reversed. Costs to plaintiffs.

D. E. HOLBROOK, JR., J., concurred.

ALLEN, J. *(concurring).* I fully agree with my brother's opinion as it applies to the facts in the instant case. I am concerned that the single sentence footnoted below[1] might in a future case be cited as authority that full facts as to how the

---

[1] "Whether the child looked both ways and came on the roadway forward or backward was only relevant and probative on the issue of the child's negligence.

accident occurred should be excluded. The full facts of how the accident occurred, what the driver saw, and what the child was doing should always be presented to the jury. Cross-examination and closing arguments thereon though improper in the present case could be without error in a future case if the child's action were relevant to the determination of the driver's negligence. If, for example, a child under seven years of age should suddenly roller skate or ride a tricycle into the roadway, I would think such conduct would be the proper subject of cross-examination and remarks upon closing argument. In such instance a clear and precise instruction to the jury that they should consider the child's conduct only in reference to the issue of the driver's negligence would be required.