Kelly, J.
(dissenting). The issue in this case is whether Michigan’s grandparent visitation statute[1] is constitutional, either as written or as applied by the trial court. The Court of Appeals held the statute unconstitutional as written, relying on the United States Supreme Court opinion in Troxel v Granville, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000). 249 Mich 388; 643 NW2d 259 (2002).
Today, the majority affirms that decision. However, it bases its analysis on an interpretation of Troxel that is inaccurate and it operates from the premise that Justice O’Connor, who authored the Troxel plurality opinion, misunderstood her own opinion. Moreover, in interpreting Michigan’s grandparent visitation statute, the majority invokes fundamental methods of statutory construction, but in application abandons those principles.
While not joining the majority, I do agree that the trial court’s visitation order impermissibly infringed Mrs. Seymour’s privacy and liberty interests in raising her children. Accordingly, I would affirm the Court of Appeals vacation of the trial court’s order granting visitation. However, I would reverse the Court of Appeals holding that the grandparent visitation statute is unconstitutional. Rather, I would hold that it is *342 the trial court’s application of the statute that is unconstitutional.
I. THE TROXEL DECISION
The resolution of this case requires a careful examination of the United States Supreme Court opinions in Troxel v Granville, supra. The Washington Supreme Court held Washington’s nonparental visitation statute unconstitutional. On review, a plurality of the members of the United States Supreme Court ruled that the trial court’s application of the statute was unconstitutional. “We . . . hold that the application of [the Washington statute] to Granville and her family violated her due process right to make decisions concerning the care, custody, and control of her daughters.” It did not hold that the statute was unconstitutional. Troxel, 530 US 75.
Thus, the Court left unresolved whether the Washington statute, or similar statutes in other states, could survive in light of the Constitution’s protections of the parent-child relationship. Because the Washington Supreme Court’s interpretation of the Washington statute was the subject of the Troxel decision, it is important to review that statute and understand how it was applied.
A. THE WASHINGTON STATUTE AND THE OPINION OF THE WASHINGTON SUPREME COURT
Section 26.10.160 of the Revised Code of Washington provides, in relevant part:
(3) Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person *343 when visitation may serve the best interest of the child whether or not. there has been any change of circumstances.
The facts in Troxel were that Tommie Granville and Brad Troxel, although never married, had two daughters. After their relationship ended, Brad lived with his parents and frequently brought his daughters to their home for weekend visitations. Two years after Tommie and Brad separated, Brad committed suicide. After his death, Tommie Granville allowed Brad’s parents extended visitation with the children. Later, however, she informed them that the visitation would be limited to one short visit each month.
The grandparents, the Troxels, brought an action in Washington state court for visitation rights pursuant to Wash Rev Code 26.10.160(3), Washington’s non-parent visitation statute. They requested two weekends of overnight visitation per month and two weeks of visitation every summer. Although Granville did not oppose visitation altogether, she asked the court to limit it to one day a month with no overnight visitation. In re Troxel, 87 Wash App 131, 133-134; 940 P2d 698 (1997). The trial court entered an order permitting visitation on one weekend a month, one week each summer, and four hours on each of the grandparents’ birthdays. In re Smith, 137 Wash 2d 1, 6; 969 P2d 21 (1998).
Granville appealed from this decision, and the Washington Court of Appeals remanded for findings of fact and conclusions of law. In re Smith, supra. On remand, the trial court, applying the state’s best interests test, concluded that visitation was in the best interests of the children.
*344 Granville again appealed. This time, the Washington Court of Appeals reversed the trial court order and dismissed the petition. It held that nonpaxents lack standing under Washington’s nonparental visitation statute, unless a custody action is pending. Having resolved the matter on the basis of standing, the court had no need to address Granville’s constitutional challenge to the statute.[2] In re Troxel, 87 Wash App 138.
The Washington Supreme Court granted the Troxels’ petition for review and consolidated their case with similar cases. It then affirmed the Washington Court of Appeals decision on a separate basis. It held that the Troxels had standing to petition for visitation under the Washington act. However, the act was unconstitutional because it impermissibly infringed the fundamental rights of parents to raise their children.
In reaching this conclusion, the Washington Supreme Court stated that the act had at least two fatal flaws: (1) it was not limited to situations where there was actual or potential harm to the child, which the Washington Supreme Court held were the limits of legitimate state interference with parental rights, and (2) because the statute allowed “any person” to petition for visitation rights at “any time,” it swept too broadly. In re Smith, 137 Wash 2d 15-21.
The Troxels brought a petition for certiorari to the United States Supreme Court. The Court granted it *345 and affirmed the Washington Supreme Court in a plurality opinion authored by Justice O’Connor.[3]
B. THE UNITED STATES SUPREME COURT DECISION
A review of the various opinions of the justices is helpful for the puipose of determining the consistent rule among them, if any.
1. THE OPINION OF THE COURT
Justice O’Connor began the substantive portion of her opinion by noting that demographic changes over the past century have altered traditional notions of the family. Consequently, child rearing responsibilities frequently extend beyond immediate family members to grandparents. In recognition of this change, she noted, every state has adopted a measure protecting the relationship between grandparents as nontraditional caregivers and the children whose lives they shape. Troxel, 530 US 63-65.
While acknowledging that “third-party” relationships are often beneficial to children, Justice O’Connor also recognized that nonparental visitation statutes place a substantial burden on the parent-child relationship. Id. at 64. Because parents have a constitutionally protected interest in the care, custody, and control of their children, these statutes risk violating the Due Process Clause of the Fourteenth Amendment. Washington v Glucksburg, 521 US 702, 719-720; 117 S Ct 2258; 138 L Ed 2d 772 (1997); Reno *346 v Flores, 507 US 292, 301-302; 113 S Ct 1439; 123 L Ed 2d 1 (1993).
Justice O’Connor relied on the Court’s rich history of protecting the parent-child relationship[4] and concluded that the trial court’s application of the Washington nonparental visitation statute was unconstitutional. Troxel, 530 US 75. She emphasized that the statute is broad in scope and that, when applying it, the trial court had gone to the full extent of the its language in entering the visitation order. Id. at 73-75. She noted concern that the order gave visitation that exceeded Granville’s wishes even though (1) Granville had allowed limited visitation to the Troxels, (2) there was no indication that Granville was an unfit parent, and (3) Granville had made her own legitimate determination of the child’s best interests. Id. at 68-72.
2. THE CONCURRING OPINIONS
Justice Souter concurred in the result and in a portion of Justice O’Connor’s reasoning. He opined that the Washington Supreme Court’s invalidation of the statute was consistent with the Court’s jurisprudence on substantive due process. Troxel, 530 US 75-76. He relied on the fact that the Washington Supreme Court had construed the statute to allow any person to petition for visitation at any time, subject only to a court’s unfettered discretion. Justice Souter differed *347 from Justice O’Connor in that he would have held that the Washington Supreme Court’s interpretation of the statute was conclusive. Thus, the statute was overbroad because it did not limit the discretion of the lower courts. As a consequence, it was invalid in all its applications. Id. at 77-79, citing Chicago v Morales, 527 US 41, 71; 119 S Ct 1849; 144 L Ed 2d 67 (1999).
Justice Thomas concurred only in the result of the plurality opinion. He stated that, because the Court had found a fundamental interest, strict scrutiny must apply and, under that standard, the statute was invalid. Troxel, 530 US 80.
3. THE DISSENTING OPINIONS
With one exception, the dissenting justices did not argue that a different result was warranted. Rather, Justices Stevens and Kennedy would have vacated the Washington Supreme Court decision because the opinion itself was too broad.
Common to both these opinions is a focus on arbitrariness. Justice Stevens and Justice Kennedy agreed that the Due Process Clause forbids unreasonable state intrusion into the parent-child relationship. Both justices agreed that, at some point, a parental decision might become so arbitrary that judicial intrusion is warranted.
The question for these justices was whether the best interests test, standing alone, is a sufficient indicator of arbitrariness. Because the Washington Supreme Court failed to address this issue, Justices Stevens and Kennedy would have vacated the Wash *348 ington Supreme Court decision and remanded the case for further findings.
Justice Scalia took a different approach. He argued that, while a parent’s interest in directing a child’s upbringing is among the unalienable rights retained by the people,[5] the right is not enumerated in the Constitution. Accordingly, while a state may have no legitimate power to curtail the right, the Court has no power to enforce it. Justice Scalia would have reversed the Washington Supreme Court decision to the extent that it relied on the Due Process Clause of the Fourteenth Amendment in holding the Washington statute invalid.
4. THE COMPOSITE OPINION
The Troxel plurality decision is capable of reconciliation in, at least, one respect. With one justice dissenting and one concurring in the result only, the Court held that the Due Process Clause of the Fourteenth Amendment protects parents’ fundamental interest in raising their children. Thus, a state may not unduly interfere in the parent-child relationship. At a minimum, state interference in the relationship is not permitted unless a parent has made a decision regarding visitation that is not in the child’s’ best interests.
H. APPLICATION
Determining whether the Michigan grandparent visitation statute is constitutional requires the following analysis: First, the fundamental interest at stake *349 should be defined. Second, the statute should not infringe this interest. Third, if it infringes, a strict scrutiny test must be applied to it. In applying this analysis, we attempt to give effect to legislative intent. Omelenchuk v City of Warren, 466 Mich 524, 528; 647 NW2d 493 (2002).
When we review a statute on the basis of a constitutional challenge, we begin with a presumption that it is constitutional. Taylor v Gates Pharmaceuticals, 468 Mich 1, 6; 658 NW2d 127 (2003). To overcome the presumption of constitutionality, the party challenging the facial constitutionality of the act “must establish that no set of circumstances exists under which the act would be valid. The fact that the ... act might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .” Straus v Governor, 459 Mich 526, 543; 592 NW2d 53 (1999), quoting United States v Salerno, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).
Moreover, we have a duty to construe a statute as constitutional, unless its unconstitutionality is clearly apparent. Taylor, supra. Beyond the question of constitutionality, it is not our province to inquire into the wisdom of the legislation. Id., citing Council of Organizations & Others for Ed About Parochiaid, Inc v Governor, 455 Mich 557, 570; 566 NW2d 208 (1997).
A. THE NATURE OF THE RIGHT INVOLVED
The fundamental interest at stake in this case is the parent-child relationship. There can be
no doubt that parents have a fundamental liberty interest in caring for and guiding their children, and a corresponding privacy interest—absent exceptional circumstances—in *350 doing so without the undue interference of strangers to them and to their child. [Troxel, 530 US 87 (opinion of Stevens, J.).]
“It is cardinal. . . that the custody, care and nurture of the child reside first in the parents . . . .” Prince v Massachusetts, 321 US 158, 166; 64 S Ct 438; 88 L Ed 645 (1944). Thus,
[i]t is plain that the interest of a parent in the companionship, care, custody, and management of his or her children “come[s] . . . with a momentum for respect lacking when appeal is made to the liberties which derive merely from shifting economic arrangements.” [Stanley v Illinois, 405 US 645, 651; 92 S Ct 1208; 31 L Ed 2d 551 (1972), citing Kovacs v Cooper, 336 US 77, 95; 69 S Ct 448; 93 L Ed 513 (1949) (Frankfurter, J, concurring).]
Because the Constitution recognizes this fundamental interest, a presumption has been created that the “natural bonds of affection lead parents to act in the best interests of their children.” Parham v J R, 442 US 584, 602; 99 S Ct 2493; 61 L Ed 2d 101 (1979). Consequently, a state interest will rarely be sufficiently compelling to override parents’ legitimate decisions regarding the care, custody, or management of their children.
B. MICHIGAN’S GRANDPARENT VISITATION STATUTE
Michigan’s grandparent visitation statute states:
(1) Except as provided in this subsectioñ, a grandparent of the child may seek an order for grandparenting time in the manner set forth in this section only if a child custody dispute with respect to that child is pending before the court. If a natural parent of an unmarried child is deceased, a parent of the deceased person may commence an action *351 for grandparenting time. Adoption of the child by a stepparent under [MCL 710.21 to 710.70] does not terminate the right of a parent of the deceased person to commence an action for grandparenting time.
(2) As used in this section, “child custody dispute” includes a proceeding in which any of the following occurs:
(a) The marriage of the child’s parents is declared invalid or is dissolved by the court, or a court enters a decree of legal separation with regard to the marriage.
(b) Legal custody of the child is given to a party other than the child’s parent, or the child is placed outside of and does not reside in the home of a parent, excluding any child who has been placed for adoption with other than a stepparent, or whose adoption by other than a stepparent has been legally finalized.
(3) A grandparent seeking a grandparenting time order may commence an action for grandparenting time, by complaint or complaint and motion for an order to show cause, in the circuit court in the county in which the grandchild resides. If a child custody dispute is pending, the order-shall be sought by motion for an order to show cause. The complaint or motion shall be accompanied by an affidavit setting forth facts supporting the requested order. The grandparent shall give notice of the filing to each party who has legal custody of the grandchild. A party having legal custody may file an opposing affidavit. A hearing shall be held by the court on its own motion or if a party so requests. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. At the conclusion of the hearing, if the court finds that it is in the best interests of the child to enter a grandparenting time order, the court shall enter an order providing for reasonable grandparenting time of the child by the grandparent by general or specific terms and conditions. If a hearing is not held, the court shall enter a grandparenting time order only upon a finding that grandparenting time is in the best interests of the child. A grandparenting time order shall not be entered for the parents of a putative father unless the father has acknowledged paternity in writing, has been adjudicated to be the father by a court of competent jurisdiction, or has contrib *352 uted regularly to the support of the child or children. The court shall make a record of the reasons for a denial of a requested grandparenting time order.
(4) A grandparent may not file more than once every 2 years, absent a showing of good cause, a complaint or motion seeking a grandparenting time order. If the court finds there is good cause to allow a grandparent to file more than 1 complaint or motion under this section in a 2-year period, the court shall allow the filing and shall consider the complaint or motion. The court may order reasonable attorney fees to the prevailing party.
(5) The court shall not enter an order restricting the movement of the grandchild if the restriction is solely for the purpose of allowing the grandparent to exercise the rights conferred in a grandparenting time order.
(6) A grandparenting time order entered in accordance with this section shall not be considered to have created parental rights in the person or persons to whom grandparenting time rights are granted. The entry of a grandparenting time order shall not prevent a court of competent jurisdiction from acting upon the custody of the child, the parental rights of the child, or the adoption of the child.
(7) The court may enter an order modifying or terminating a grandparenting time order whenever such a modification or termination is in the best interests of the child. [MCL 722.27b.]
It is evident that, like the Washington statute, Michigan’s grandparent visitation statute infringes the parents’ liberty interest in directing the upbringing of their children. It does this by allowing third parties to insert themselves into the relationship over a parent’s objection. Thus, if the statute is allowed to stand, it must pass the strict scrutiny test.
*353 C. APPLICATION OF STRICT SCRUTINY TO THE STATUTE
In order to meet strict scrutiny, a statute must be narrowly tailored to serve a compelling governmental interest. In the realm of fundamental rights, this test takes on substantial weight. The very concept of a liberty interest presumes that there are few, if any, governmental interests that will meet this burden. Moreover, a court’s application of an otherwise valid statute is invalid if it extends beyond the limits of constitutional authority.
The majority holds that our grandparent visitation statute cannot withstand constitutional scrutiny. Specifically, it rules that the unconstitutionality lies in its failure to “accord deference to the decisions of fit parents regarding third-party visitation.” Ante at 332.
It is apparent to me that this conclusion rests on an unnecessarily strict interpretation of the statute. It violates the principle that “ ‘[a] text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably to contain all that it fairly means.’ ” Corrigan & Thomas, “Dice Loading” Rules of statutory interpretation, 59 NYU Ann Surv Am L 231, 231-232 (2003), quoting Scalia, A Matter of Interpretation: Federal Courts and the Law (Princeton, N.J.: Princeton University Press, 1997), p 23.
1. FACIAL VALIDITY
a. COMPELLING GOVERNMENT INTEREST
“A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens . . . .” Prince v *354 Massachusetts, 321 US 158, 168; 64 S Ct 438; 88 L Ed 645 (1944). Accordingly, “[i]t is evident beyond the need for elaboration that a State’s interest in ‘safeguarding the physical and psychological well-being of a minor’ is ‘compelling.’ ” New York v Ferber, 458 US 747, 756-757; 102 S Ct 3348; 73 L Ed 2d 1113 (1982), quoting Globe Newspaper Co v Superior Court, 457 US 596, 607; 102 S Ct 2613; 73 L Ed 2d 248 (1982). Therefore, we may sustain legislation aimed at protecting the physical and emotional well-being of youth even when the legislation impinges on constitutionally protected rights. Ferber, supra at 757.
Our grandparent visitation statute is meant to protect children’s well-being by providing for visitation when it is in their best interests. Thus, the statute must be upheld if it is narrowly tailored to address this compelling interest.
b. NARROWLY TAILORED
By its terms, the Michigan grandparent visitation statute is substantially more narrow than the Washington statute. For instance, the Washington statute allowed any person the ability to bring a petition for visitation at any time. By contrast, the Michigan statute allows only grandparents to petition for visitation and only under circumstances where a prior disturbance in the parent-child relationship limits the effect of the intrusion. The Legislature allows court-ordered nonparental visitation only where (1) the relationship between the child and the petitioner is that of grandchild-grandparent, and (2) the petition for visitation is made during the pendency of a child custody dispute or the natural parent of the unmarried child is deceased.
*355 The crucial fact in this case is that the Michigan statute, like the Washington statute, employs a best-interests-of-the-child standard to determine whether a court should issue a visitation order. The inclusion of this standard constituted the ultimate flaw in the Washington statute; once a petition was properly before a Washington court, the act gave the judge unfettered discretion to determine whether to award visitation.[6] Thus, I would agree with the majority that, unless our Legislature has otherwise limited our trial courts’ discretion in awarding visitation to grandparents, we must hold the statute unconstitutional.
The majority is apparently persuaded by the argument that the statute includes a presumption in favor of awarding grandparent visitation. Ante, at 334 n 10. However, this interpretation runs afoul of the basic tenet that a statute is presumed constitutional. The majority incorrectly states that the statute does not require a trial court to justify its decision to award grandparent visitation with any factual findings or analysis. To the contrary, the statute forbids a court from entering a grandparent visitation order unless it “finds that it is in the best interests of the child . . . .” MCL 722.27b(3). Under our court rules, the court must place its findings of fact and conclusions of law on the record. MCR 3.210(D) and 2.517(A)(1).
The Michigan statute does not include the most restrictive terms possible, but it need not do so to pass constitutional muster. Indeed, a statute may be constitutional even though it lacks provisions that meet constitutional requirements. As long as it has *356 terms not excluding such requirements, a court is justified in finding that constitutional requirements are embodied in the statute. Council of Organizations, 455 Mich 569, quoting 16 Am Jur 2d, Constitutional Law, § 225, p 659.
Moreover, the grandparent visitation statute does not exist in a vacuum. It is part of an extensive statutory scheme, the Child Custody Act of 1970,[7] that guides the resolution of disputes regarding custody and visitation rights. The grandparent visitation statute cannot properly be interpreted without reference to applicable provisions of the Child Custody Act. Cf. Arrowhead Dev Co v Livingston Co Rd Comm, 413 Mich 505, 516; 322 NW2d 702 (1982). Specifically, the grandparent visitation statute must be read in conjunction with MCL 722.23 and MCL 722.25, which contain the state’s best interests standard.
Of particular importance is MCL 722.23(1), which requires that courts take into account any unnamed factor relevant to a dispute. One such factor always present in grandparent visitation disputes must be the constitutional rights of the parents.[8]
Additionally, MCL 722.25 works collectively with MCL 722.23 to protect parents’ constitutional rights. MCL 722.25(1) provides that
[i]f a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court *357 shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.
This analysis supports the conclusion that our grandparent visitation statute is drawn more narrowly than the statute at issue in Troxel. It also demonstrates that, in drafting the statute, our Legislature was concerned with protecting parents’ fundamental interest in raising their children.
Accordingly, when the Legislature enacted the grandparent visitation statute, it saw fit to explicitly require that trial courts give deference to a fit parent’s decisions regarding grandparent visitation. The majority’s argument that the provisions requiring deference are inapplicable in the context of grandparent visitation are untenable. The Legislature resolved this issue by including grandparent visitation within the gamut of custody disputes.[9] Therefore, because it is narrowly tailored to serve a compelling governmental interest, the statute is constitutional.
2. THE TRIAL COURT’S APPLICATION OF THE STATUTE
Although I believe that the grandparent visitation statute is valid, the visitation order must be over *358 turned because it unduly infringes Mrs. Seymour’s constitutionally protected interest in raising her children. The record indicates that the order far exceeded the discretion that the Legislature gave the trial court. The basis for the order was the court’s conclusion that “grandmothers are very important.” This statement shows that the trial court’s decision involved “nothing more than a simple disagreement between the [trial court and Theresa DeRose] concerning her children’s best interests.” Troxel, 530 US 72 (opinion of O’Connor, J.); Parham, 442 US 603.[10]
Moreover, this case is less difficult than was Troxel. Here, Mrs. Seymour not only made a legitimate decision concerning her child, she demonstrated that she made the decision to protect the integrity of her family. Had Mrs. DeRose been allowed to continue visitation with Mrs. Seymour’s daughter, she could have continued to tell the child that Mrs. Seymour’s ex-husband was not guilty of sexually abusing the child’s sis *359 ter. The potential harm to both children is a legitimate concern.
Mrs. DeRose has failed to demonstrate that Mrs. Seymour’s decision was not in the best interests of her children. The evidence demonstrated that Mrs. Seymour’s concern for the integrity of her family motivated her decision. This concern is the basis of the liberty interest at stake in this case. See Caban v Mohammed, 441 US 380, 397; 99 S Ct 1760; 60 L Ed 2d 297 (1979); Lehr v Robertson, 463 US 248, 260-261; 103 S Ct 2985; 77 L Ed 2d 614 (1983); Michael H v Gerald D, 491 US 110, 123; 109 S Ct 2333; 105 L Ed 2d 91 (1989). Accordingly, I would hold that the visitation order is an unconstitutional abuse of the discretion granted to the trial court by the Michigan grandparent visitation statute.
CONCLUSION
Parents’ fundamental right to control the upbringing of their children is protected by the Due Process Clause of the Fourteenth Amendment. The state may not interfere with this right unless the means of interference are narrowly tailored to serve a compelling governmental interest.
It is beyond dispute that our grandparent visitation statute serves a compelling governmental interest. It promotes the well-being of our children by allowing visitation between children and grandparents when visitation is in the best interests of the children. Thus, the statute must be upheld if it is narrowly tailored to serve this interest.
I believe that the Michigan grandparent visitation statute is sufficiently narrow in scope to meet this *360 standard. As opposed to the statute under scrutiny in Troxel, the Michigan statute allows only grandparents to petition our courts for nonparental visitation. Also, the only occasions when grandparents may be granted visitation against a parent’s wishes are during the pendency of a child custody dispute or after the death of a natural parent.
Moreover, the Child Custody Act is written to protect parents’ fundamental interest in raising their children. Under it, grandparents obtain visitation only if they can prove, by clear and convincing evidence, that a parent’s decision regarding visitation is not in the best interests of the children. Additionally, the act limits the discretion a court can exercise in determining the children’s best interests. Therefore, it is narrowly tailored.
However, the trial court’s finding that grandmothers are important is insufficient to support the order issued in this case. “[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a ‘better’ decision could be made.” Id. at 72-73.
In this case, the trial court substituted its opinion concerning the value of grandparent visitation for that of Mrs. Seymour. The trial court overrode Mrs. Seymour’s legitimate decision concerning the upbringing of her children without finding clear and convincing evidence on the basis of the best interest factors. Consequently, the visitation order was an undue burden on the relationship between Mrs. Seymour and her daughters.
In the end, I differ significantly with the majority in my interpretation of the grandparent visitation stat *361 ute. In my opinion the majority has ignored the text of the Child Custody Act. It has chosen instead to follow the example of the Washington Supreme Court by needlessly illegitimizing our grandparent visitation statute. Moreover, it has failed to provide the Legislature with guidance in drafting a statute that the Court could find constitutional.
Because it is clear to me that the visitation order was unconstitutional, I would affirm the decision of the Court of Appeals to vacate it. Troxel, 530 US 75. However, I would not find the grandparent visitation statute unconstitutional. I would find, merely, that the trial court’s application of the statute was unconstitutional in this instance.

 MCL 722.27b.

 The court did state that this limitation on nonparental visitation is “consistent with the constitutional restrictions on state interference with parents’ fundamental liberty interest in the ‘care, custody, and management’ of their children.” In re Troxel, 87 Wash App 135, quoting Santosky v Kramer, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

 Justice O’Connor was joined in the opinion by Chief Justice Rehnquist and Justices Ginsburg and Breyer. Justices Souter and Thomas concurred on alternative bases. Justices Stevens, Scalia, and Kennedy each authored dissents.

 See, e.g., Meyer v Nebraska, 262 US 390; 43 S Ct 625; 67 L Ed 1042 (1923); Pierce v Society of Sisters, 268 US 510; 45 S Ct 571; 69 L Ed 1070 (1925); Prince v Massachusetts, 321 US 158; 64 S Ct 438; 88 L Ed 645 (1944); Stanley v minors, 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972); Wisconsin v Yoder, 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972); Quilloin v Walcott, 434 US 246; 98 S Ct 549; 54 L Ed 2d 511 (1978); Parham v J R, 442 US 584; 99 S Ct 2493; 61 L Ed 2d 101 (1979); Santosky, supra.

 See US Const, Am IX.

 Unlike the Michigan grandparent visitation statute, the Washington statute never defined the factors to consider before a court could find that a visitation order is in the “best interests of the child.”

 MCL 722.21 et seq.

 See Winekoff v Pospisil, 384 Mich 260, 267-268; 181 NW2d 897 (1970), quoting Lake Shore & MSR Co v Miller, 25 Mich 274, 291-292 (1872) (“[C]ourts are bound judicially to know and apply such laws and principles as part of the law of the land.”).

 MCL 722.27(1) provides in pertinent part:
If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
* ** *
(f) Upon petition consider the reasonable grandparenting time of maternal or paternal grandparents as provided in section 7b ... .

 Compare this statement with those made by the trial court in Troxel:
The burden is to show that it is in the best interest of the children to have some visitation and some quality time with their grandparents. I think in most situations a commonsensical approach [is that] it is normally in the best interest of the children to spend quality time with the grandparent, unless the grandparent, [sic] there are some issues or problems involved wherein the grandparents, their lifestyles are going to impact adversely upon the children. That certainly isn’t the case here from what I can tell.
I look back on some personal experiences .... We always spent as kids a week with one set of grandparents and another set of grandparents, [and] it happened to work out in our family that [it] turned out to be an enjoyable experience. Maybe that can, in this family, if that is how it works out. [Troxel, 530 US 69, 72.]