*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TREVOR CARRANZA,

        Plaintiff-Appellee,

v

MELISSA PRICE,

        Defendant-Appellant.

UNPUBLISHED
November 10, 2022

No. 360182
Lenawee Circuit Court
Family Division
LC No. 21-048628-DS

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right an order granting plaintiff sole physical and legal custody of RC, IP, and MC, establishing a parenting-time schedule for defendant at the discretion of the Department of Health and Human Services (DHHS), and continuing defendant's child support obligations. Finding no error requiring reversal, we affirm.

## I. BACKGROUND

Although this appeal stems from the parties' custody case, the particular issues raised by defendant concern the interplay between the custody case and three additional cases assigned to the same circuit court judge: child protective proceedings, a personal protection order (PPO) case initiated by plaintiff, and a second PPO case initiated by plaintiff's significant other.

The pertinent legal proceedings began in January 2019 when DHHS sought jurisdiction over RC, IP, and MC (the children), as well as defendant's eldest daughter, JP.[1] Plaintiff and defendant were both respondents in that case. The trial court acquired jurisdiction with respect to defendant on the basis of her admissions that JP and IP both had bruises as a result of her improper supervision and that there had been domestic violence between herself and plaintiff while the children and JP were present. Plaintiff admitted that he observed IP's bruising, neglected to follow through with RC's therapeutic services, failed to take the children to well-child examinations, and

---

[1] JP is not at issue in this custody case.

that the police had been called to the parties' home several times over the years for domestic disputes and violence. As it did with defendant, the trial court found plaintiff's admissions sufficient to establish jurisdiction with respect to plaintiff. The children and JP were quickly returned to the parties, only to be removed again in April 2019 because they all exhibited signs of abuse or neglect. Although the precise timing is unclear from the record, plaintiff and defendant ended their relationship sometime thereafter.

The child protective proceedings continued to progress, and the trial court again gave DHHS discretion to return the children with in-home services in early 2020. In the first stage of the reunification, RC was placed with plaintiff and IP was placed with defendant. MC was then placed with defendant as well. In August 2020, RC was placed with defendant at plaintiff's request. JP remained in foster care. In January 2021, however, the children were removed from defendant and placed with plaintiff after both RC and IP were observed with facial and ear bruising that raised concerns regarding physical abuse. The children remained in plaintiff's care throughout the remainder of the child protective proceedings.

In March 2021, plaintiff obtained a PPO against defendant on the basis of a petition alleging that defendant went to the childrens' respective childcare settings twice without approval, despite the fact that she was not allowed any unsupervised contact with them. Plaintiff further alleged that defendant was continuously looking for his vehicle at his residence and harassed him "through message[s] about the placement and removal of [the] children." Plaintiff's significant other, Chantae, likewise obtained a PPO against defendant at the same time because defendant confronted her in public, made a scene, and also contacted the father of her children.

In July 2021, plaintiff initiated the instant case with a complaint for support. After a child support order was entered, the parties appeared for a custody hearing in November 2021. The trial court announced, without objection, that it would take judicial notice of the other proceedings. Following brief testimony from the parties, the trial court addressed the statutory best-interest factors on the record, finding that each factor either favored plaintiff, did not favor either party, or was inapplicable. The trial court then awarded plaintiff sole physical and legal custody of the children. Rather than specifying a particular parenting-time schedule for defendant, the trial court ordered parenting time "as directed by [DHHS] until the temporary jurisdiction of the court in [the child protective proceedings] is at its natural conclusion . . . ." The trial court encouraged the parties to mediate the question of parenting time after the child protective proceedings ended, but noted that it would entertain a motion regarding that issue if the parties could not reach an agreement.

## II. CUSTODY ORDER DURING CHILD PROTECTIVE PROCEEDINGS

Defendant first argues that the trial court erred by entering a custody order while the child protective proceedings were ongoing. We disagree.

An issue is generally preserved for review if it was raised before or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Because defendant did not object to the trial court's entry of a custody order on this basis below, nor did the trial court directly address whether it could take action on the custody issue in light of the procedural posture of the child protective proceedings, this issue is unpreserved. Arguably, this

issue is waived, see *In re Sanborn*, 337 Mich App 252, 263 n 3; 976 NW2d 44 (2021), but we may review it for plain error. *Marik v Marik*, 325 Mich App 353, 359; 925 NW2d 885 (2018). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Sanborn*, 337 Mich App at 258 (quotation marks and citation omitted).

In support of this claim of error, defendant relies exclusively on this Court's opinion in *In re AP*, 283 Mich App 574; 770 NW2d 403 (2009). In that case, the trial court presiding over child protective proceedings awarded a father joint legal custody and sole physical custody of the minor child, despite an earlier order in a paternity action awarding sole legal and physical custody to the mother. *Id*. at 577-578. This Court held that the trial court had authority to enter a new custody order, but vacated the order because the trial court failed to comply with the procedural requirements of the Child Custody Act (CCA), MCL 722.21 *et seq*., for modifying custody. *Id*. at 607-608. In reaching this conclusion, this Court discussed the potential conflict that can arise when domestic relations cases governed by the CCA and child protective proceedings under the juvenile code, MCL 712A.1 *et seq*., intersect, explaining:

> Obviously, upon entry of a child custody order under the CCA, a child's parents, or other custodians, must abide by the terms of the custody order. However, once a juvenile court assumes jurisdiction over a child and the child becomes a ward of the court under the juvenile code, the juvenile court's orders supersede all previous orders, including custody orders entered by another court, even if inconsistent or contradictory. MCR 3.205(C); see *Krajewski v Krajewski*, 420 Mich 729, 734-735; 362 NW2d 230 (1984). In other words, the previous custody orders affecting the minor become dormant, in a metaphoric sense, during the pendency of the juvenile proceedings, but when the juvenile court dismisses its jurisdiction over the child, all those previous custody orders continue to remain in full force and effect. This is necessarily the result because the prior domestic relations court never relinquished its jurisdiction over the custody dispute, as the CCA vests a court with continuing jurisdiction over the matter, [*Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004)], nor was the prior court required to relinquish or waive its jurisdiction in order for the juvenile court to exercise its jurisdiction, *Krajewski*, 420 Mich at 734-735; MCR 3.205(A). In addition, the juvenile court's orders function to supersede, rather than modify or terminate, the custody orders while the juvenile matter is pending because the juvenile orders are entered pursuant to a distinct statutory scheme that takes precedence over the CCA. See *Krajewski*, 420 Mich at 734-735. We note that during the duration of the juvenile proceedings, while the parties subject to the custody order can move to modify the custody order, any modification would remain superseded by the juvenile court's orders. [*Id*. at 593-594 (footnote omitted).]

Nothing within *In re AP* supports the notion that a circuit court is precluded from entering a custody order while child protective proceedings are pending. To the contrary, *In re AP* demonstrates that simultaneous action in both proceedings is permitted with the understanding that a custody order entered under the CCA will be superseded by orders entered in the child protective

proceedings until jurisdiction in the latter case is dismissed. *Id.* After such dismissal, the custody order is given full force and effect, even if it alters the previously existing custodial arrangement. *Id.*

The balance of defendant's arguments regarding this issue—namely, that an award of physical custody to plaintiff interferes with the stated goal of reunification in the child protective proceedings and imposes on defendant the burden of proving proper cause or change in circumstances to modify custody following dismissal of the child protective proceedings—speak more to the question of prejudice caused by the custody order, rather than the trial court's authority to enter the challenged order. Defendant's focus on these arguments misapprehends the applicable plain-error standard of review. In the absence of a plain or obvious error, there is no need to consider whether the allegedly erroneous order affected defendant's substantial rights. *Marik*, 325 Mich App at 359.

## III. JUDICIAL NOTICE

Defendant next argues that the trial court erred by taking judicial notice of the parties' other proceedings. We disagree.

Defendant did not preserve this evidentiary issue for review by objecting before the trial court on the same grounds presented on appeal. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 709-710; 922 NW2d 662 (2018). This issue is arguably waived, see *Sanborn*, 337 Mich App at 263 n 3, but we review unpreserved issues for plain error. *Marik*, 325 Mich App at 359. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Sanborn*, 337 Mich App at 258 (quotation marks and citation omitted).

MRE 201 governs judicial notice of adjudicative facts. MRE 201(a). A court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). Allowing judicial notice of such matters in lieu of evidentiary proof is designed to advance convenience and expediency in litigation. *Winekoff v Pospisil*, 384 Mich 260, 268; 181 NW2d 897 (1970).

Defendant contends that the trial court erred by taking judicial notice of the related proceedings because MRE 201 authorizes judicial notice of *facts*—not, as defendant puts it, "a judicially recognized case file without indication of what facts are to be judicially noticed." Defendant's position is unpersuasive because it has long been held that a court is permitted to take judicial notice of its own files and records. *Knowlton v Port Huron*, 355 Mich 448, 452; 94 NW2d 824 (1959) (observing that "a circuit judge may take judicial notice of the files and records of the court in which he sits"); *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009) (reasoning that the trial court could take judicial notice of previous termination of parental rights that occurred before the same judge).

Defendant reasons that this rule is inapplicable in this case because the trial court was not taking judicial notice of a particular identified order from other proceedings, but she does not cite authority imposing any such limitation on judicial notice of court files and records. Defendant directs our attention to the discussion of judicial notice in *In re Stowe*, 162 Mich App 27, 32-33; 412 NW2d 655 (1987).[2] In that case, the respondent's parental rights were terminated in a stepparent adoption case on the basis that the respondent had not financially supported, communicated with, or visited the children for at least two years. *Id*. at 29. The respondent argued that the trial court erred by taking judicial notice of a judgment of divorce that included a support order when MRE 1002, the "best evidence rule," required admission of the original judgment. *Id*. at 32. This Court acknowledged that the judgment was crucial to the case, but held that judicial notice was properly taken. *Id*. at 32-33. Because the judgment had been entered by and was on file with the same court, whether the respondent had been ordered to pay support "could be readily and accurately determined by reference to a source whose accuracy cannot be questioned," as required for judicial notice under MRE 201(b). *Id*. at 33.

While the entirety of the related proceedings at issue in this case is not the type of specific, concrete fact discussed in *Stowe*, this Court's reasoning and reliance on MRE 201(b) is equally applicable in this context. The trial court, i.e., with the same circuit court judge assigned all of the proceedings, could readily and accurately determine what occurred and what evidence was presented in the child protective proceedings and PPO cases by reference to the record in those cases over which he presided. Thus, the trial court did not plainly err by taking judicial notice of the related proceedings.

Moreover, even if the trial court had plainly erred in this regard, defendant has not demonstrated entitlement to relief because she does not offer any persuasive argument regarding how the alleged error affected her substantial rights. Defendant reasons only that she was placed at a severe disadvantage by having to obtain transcripts from the child protective proceedings. This "disadvantage," while perhaps a bit inconvenient, did not affect her substantial rights by impacting the outcome of the proceedings in the trial court. *Sanborn*, 337 Mich App at 258.

## IV. BEST-INTEREST FACTORS

Lastly, defendant challenges several of the trial court's findings regarding the statutory best-interest factors. We decline to address this issue because the record available for our review is insufficient. Moreover, the record before us indicates that any error that may have occurred was harmless in any event.

"Under the Child Custody Act, MCL 722.21 *et seq*., 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. The trial court's factual findings regarding the statutory best-interest factors are reviewed under the

---

[2] Opinions of this Court decided before November 1, 1990, are not precedentially binding under MCR 7.215(J)(1), but may be considered as persuasive authority. *Jackson v Dir of Dep't of Corrections*, 329 Mich App 422, 428 n 5; 942 NW2d 635 (2019).

-5-

great-weight-of-the-evidence standard. *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). The trial court's ultimate decision regarding custody is reviewed for an abuse of discretion. *Dailey*, 291 Mich App at 664. "In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020) (quotation marks and citation omitted).

The factors outlined in MCL 722.23 govern the trial court's determination of a custody arrangement in the best interests of the children. *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). Because the children had an established custodial environment with plaintiff and the trial court's custody order did not alter that environment, the trial court's order had to be supported by a preponderance of the evidence that the new custody order was in the children's best interests. *Id*. at 243. We emphasize again that presented with challenges to the trial court's best-interest findings like those advanced by defendant in this appeal, this Court must determine whether the trial court's findings were contrary to the great weight of the evidence—that is, whether "the evidence clearly preponderates in the opposite direction." *Pennington*, 329 Mich App at 570. This standard necessary requires review of *all* the evidence before the trial court.

"[T]he appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993). MCR 7.210(B)(1)(a) places the responsibility for securing transcripts on the appellant. *Kern v Kern-Koskela*, 320 Mich App 212, 229; 905 NW2d 453 (2017). When an appellant fails to do so, this Court will not consider issues for which the missing transcripts are necessary. *Id*. See also *Myers v Jarnac*, 189 Mich App 436, 444; 474 NW2d 302 (1991) (explaining that the appellant "may not unilaterally make the determination that less than the full transcript of all proceedings is required for the appeal").

The trial court took judicial notice of the child protective proceedings and PPO cases, but only the record from the custody case was initially transmitted to this Court. Defendant supplied limited documents and transcripts from the other proceedings with her appellate filings, but the limited nature of these documents and transcripts severely hinders effective review under the appropriate standard. Even after this Court asked defendant to produce the record from the child protective proceedings—the case in which most of the evidence supporting the trial court's custody decision was received—and took steps to secure the record directly from the trial court, we are without a complete record. The child protective proceedings have been pending since January 2019, with numerous hearings occurring in the nearly three years that elapsed between that time and the trial court's oral ruling granting plaintiff custody of the children. Yet only six transcripts have been made available for our review. Because we cannot accurately determine from an incomplete record whether the trial court's best-interest findings were against the great weight of the evidence, we decline to reach the merits of this issue. See *Kern*, 320 Mich App at 230 (declining to review issue when absence of transcripts left this Court unable to discern trial court's reasoning); *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 769; 887 NW2d 635 (2016) (noting that failure to secure necessary transcripts constitutes a waiver of related issues).

Moreover, while the limited record leaves us unable to properly review the trial court's individual best-interest findings, the record that is available suggests that the trial court's decision to grant plaintiff custody was an appropriate exercise of its discretion. Even if we accepted all of defendant's arguments regarding the specific best-interest factors set forth in MCL 722.23(a) through (k), the result would be an approximately equal balance of factors favoring each party.[3] But defendant's argument on appeal does not address MCL 722.23(*l*), which directs the court to consider any other factor "relevant to a particular child custody dispute." One of the key considerations that the trial court assessed under this factor was that the children were at a substantial risk of harm in defendant's care, even after years of services designed to alleviate that risk. The children were temporarily returned to defendant's physical custody only to be removed again after RC and IP suffered injuries that were highly indicative of abuse. The evidence suggests that defendant either personally inflicted the bruises or, in the best-case scenario, was unable to keep the children from harming themselves or harming each other.

Approximately three months before the custody hearing, defendant's parenting-time visits were suspended because her behavior during the visits was harmful to the children. The order was prompted, in part, by the guardian ad litem's motion to suspend defendant's visits, which motion was supported by written accounts of defendant's troubling behavior during visits in June 2021 and July 2021. According to those accounts, defendant placed the children in stressful situations by being confrontational with visit supervisors, yelling, and cursing in front of the children several times. Moreover, she seemed incapable of caring for all of her children at the same time, leading to frustrated outbursts or failure to notice that one or more children were engaging in unsafe activities or behaviors. For example, defendant did not notice or intervene when RC put a small toy in his mouth, when IP was banging his head on a couch, or when MC attempted somersaults on a couch. On one occasion, it was reported that defendant "grabbed [RC's] arm really tight," which is particularly concerning in light of the circumstances that led to the children's previous removals.

In stark contrast, the children—especially RC—seemed to flourish in the more structured environment created by plaintiff. The children's behavior improved and there was no apparent risk of physical harm in his care.[4] Viewing the totality of the circumstances and the record before us, the trial court did not abuse its discretion by awarding plaintiff custody, regardless of whether best-interest factors (a) through (k) should have been more evenly weighted than originally found by the trial court.

## V. CONCLUSION

---

[3] Accepting defendant's view of the best-interest factors, five factors would be equally weighted (factors (a), (b), (c), (e), and (f)), two factors would not favor either party (factors (g) and (k)), factor (i) would remain inapplicable, factors (d) and (h) would favor plaintiff, and factor (j) would favor defendant.

[4] The only evidence that the children were injured in plaintiff's care concerned bruising on RC's outer thigh, where he liked to hit himself, sometime in February or March 2021. Plaintiff promptly addressed the issue by purchasing padded shorts to protect RC.

Defendant has not shown entitlement to relief.  We affirm.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola