*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER M. MATHEWSON,

      Plaintiff-Appellant,

v

NORA LOUISE MILLS, also known as NORA
WESCHE,

      Defendant-Appellee.

UNPUBLISHED
March 23, 2023

No. 362798
Montcalm Circuit Court
LC No. 2010-014146-DC

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order imposing restrictions on his parenting time of the parties' minor children, HM, SM, and AM. Plaintiff argues that the trial court erred when it considered information gathered from outside the record and abused its discretion when it imposed significant conditions on plaintiff's parenting time against the great weight of the evidence and contrary to the children's best interests. We agree, and vacate the trial court order.

In December 2010, plaintiff and defendant ended their relationship and agreed to exercise joint legal and physical custody of the three children. In October 2019, defendant and plaintiff entered into a new custody agreement, maintaining joint legal custody of all three children, but giving plaintiff full physical custody of HM and SM, and giving defendant full physical custody of AM. Defendant and plaintiff agreed on parenting-time changes as well.

In July 2021, defendant requested a change in custody, parenting time, and child support, alleging that plaintiff entered into a domestic relationship with Tara Williams shortly after the October 2019 custody order,[1] that Williams was living with plaintiff, and that the children were left in Williams's care while plaintiff was not home. Defendant alleged that Williams had "a long

---

[1] Defense counsel clarified at oral argument that defendant and Williams got married during the course of the lower court proceedings, and were married when the trial court entered the parenting-time order that is being appealed.

history consuming meth," lost custody of her own child because of drug addiction and criminal history, and went to jail and drug rehabilitation more than once since October 2019. Defendant believed that Williams and plaintiff engaged in domestic violence, that Williams fought with others to the point of being banned from at least one property, and that she spoke disparagingly about defendant with the children present. Further allegations included transporting the children without a driver's license and, on at least one occasion, while intoxicated. Finally, defendant stated that Williams posed as defendant when taking HM and SM to the doctor to obtain prescription drugs for her own use.

As related to plaintiff, defendant alleged that plaintiff used cocaine, abused alcohol, tested positive for "drugs other than [marijuana]" during an investigation by Children's Protective Services (CPS), and often appeared drunk or high when defendant picked up the children. Defendant stated that the children missed several days of school because of plaintiff's alcohol abuse, and that plaintiff had at least three different jobs in the past two years. Defendant also noted that HM and SM "have both either contemplated or attempted suicide and have otherwise engaged in self-harm since [October 2019]." Defendant was not notified of these incidents in a timely manner and, on one occasion, only learned about suicide notes written by SM when she found out that he was in therapy. Thus, defendant requested that she be granted full custody of the children, that plaintiff's parenting time be limited until he could "demonstrate consistent sobriety," and that Williams not be allowed to interact with the children.[2]

After three days of testimony, nearly all defendant's allegations were left unproven. CPS deemed reports of abuse and neglect following the October 2019 custody order to be unsubstantiated. Plaintiff presented testimony that he and Williams were invested in the boys' schooling and mental-health needs, engaged in various parenting classes, and, particularly, that Williams was in recovery and remained clean from hard-drug use. Williams suffered the consequences of her nine-month addiction to methamphetamine, including jail time and having her daughter placed in a guardianship. However, Williams remained clean from any unauthorized drug use and was discharged from probation early. Plaintiff and Williams both admitted to alcohol and marijuana use after that time, but both ceased alcohol use, and Williams ceased marijuana use. Williams trained to be a peer recovery coach and eventually took on paid and volunteer positions in that field. Plaintiff and Williams testified that the children's doctor understood that Williams was not the children's mother despite records indicating that it was the children's mother who brought them in to appointments; rather, this was a clerical error, and plaintiff was actually required to present written releases for Williams to take them in when he could not. Defendant presented no evidence to corroborate this allegation, or many others involving Williams.

Issues regarding communication between the parties were addressed at the hearing, but also noted as largely resolved through the use of a coparenting app. Communications were rocky after a Facebook post by Williams that included a disparaging remark about defendant. Defendant acknowledged in her testimony, however, that she usually communicated well with Williams,

---

[2] Defendant also requested a change in child support as warranted by the change in custody and parenting time. However, matters of child support are not brought as an issue on appeal

often better than with plaintiff. Defendant even wrote a letter of support for Williams a couple of months before the custody request, indicating that the children never spoke badly about Williams and that Williams was safe around children.

The trial court concluded that an established custodial environment was present with both parents. After analyzing each of the best-interest factors,[3] the trial court determined that all but two factors—(b), the capacity and disposition to give the children love, affection, and guidance; and (j), willingness to facilitate a relationship with the other parent—weighed equally between defendant and plaintiff. Under Factor (b), the trial court found that it was "hard to explain" that school personnel found 15.9 absences to be normal, and that neither they nor the social workers had anything negative to say regarding plaintiff. The trial court expressed concerns about plaintiff's behavior toward the children when he drank or used marijuana. Under Factor (j), the trial court found that plaintiff was "just not very fond of defendant mother," and that plaintiff "has made it difficult or failed to encourage a close and continuing parent-child relationship between the boys and mom." Further, the trial court stated that it had no doubt that Williams exacerbated the communication issue, and that it would "do what it [could] to remedy that going forward." In all, however, the trial court did not find by clear and convincing evidence that a change in custody was warranted.

However, the trial court ordered modifications to the October 2019 order, including continued use of the app that plaintiff described. The trial court then stated:

> As it relates to some of the issues, I want to address Ms. Williams. This record did not support much of what was in the motion. However, I think this record supports valid concerns by the Court. Ms. Williams clearly testified that she has this prior drug conviction. She clearly testified that she's a recovering addict, that she is engaged as a recovery coach, even being paid for the same, which is stunning to the Court, frankly.
>
> I even asked the one witness . . . about this. When we think about how long someone should be in sobriety before we're entrusting the folks that we place in a specialty court to outside influences like Ms. Williams, it really makes no sense. And as somebody who has been a board member of the Michigan Association of Treatment Court Professionals for ten years until I recently resigned, I don't know that I've heard of it happening in that manner or that quickly. And, again, I can't say that I'm anything but stunned about that.
>
> But here's what I heard on the record that I think supports what the Court's gonna do with its next order. I did hear Ms. Williams in very clear terms that she's a recovering addict and that upon moving in or shortly before or after the marriage to [plaintiff], she was drinking, much like he was, and then decided not to do that.
>
> And then I heard that she switched to marijuana and could not, upon questioning by the Court today, give the Court any authority or any real good reason

---

[3] See MCL 722.23(a)-(*l*) of the Child Custody Act of 1970.

how that was a great idea for somebody in recovery. And to the contrary, it's not. I'm not aware of any study that says one should do that.

It is also clear to the Court here from the testimony today that Ms. Williams just gums up whatever communications there may need—that need to be had between the plaintiff and the defendant and creates some animosity there. I think the Facebook post is a great example of that.

And then I can't help—I even asked Ms. Williams this—wonder how we go from . . . just stop[ping] doing the drug screens in the middle of the NA proceedings on attorney's advice—maybe it was—it doesn't make any sense to me. I guess it was trying to salvage the best of a bad situation.

But I am suspicious. I'm inherently suspicious on this record of the idea that I'm going to move away from trying to get back into my own child's life, but now I'm gonna be Supermom with my husband of a year's children. That makes no sense to the Court.

And it makes no sense to the Court that somehow that's in the best interests of the minor children that now we've got Ms. Williams, who's running them to doctor's appointments, to school, etcetera. I don't think that helps anybody. It certainly doesn't help the minor children. And again, I'm inherently suspicious of the motivation there and whether that is in any way, shape, or form good for the minor children.

Following this dialogue, the trial court imposed the following restrictions on plaintiff's parenting time:

There shall be no unsupervised contact with Plaintiffs wife, Tara Mathewson. Mrs. Mathewson shall not transport the children to school, medical appointments, or extracurricular activities. While the children are with Plaintiff Father, there shall be no drugs or alcohol in Plaintiff's home, including any finished marijuana product.[4] When the children are returned to Plaintiff Father, he is subject to a drug and alcohol screening.

On appeal, plaintiff argues that the trial court erred by considering facts from its own investigation not presented on the record, and that Williams's qualification as a recovery coach was not relevant to the complaint for custody, but appeared to be a means for the trial court to assess Williams's credibility.

Typically, a trial court's use of judicial notice is one of discretion and, therefore, is reviewed for an abuse of that discretion. MRE 201(c); *Freed v Salas*, 286 Mich App 300, 341; 780 NW2d 844 (2009). However, an unpreserved issue is reviewed for plain error affecting

---

[4] The trial court did not believe that it could regulate plaintiff's growing of marijuana plants, but stated that it could regulate the minor children's access to the finished product.

substantial rights. *Marik v Marik*, 325 Mich App 353, 359; 925 NW2d 885 (2018). Because defendant failed to object when the trial court raised questions that implied it conducted its own investigation into the matter and considered facts not in the record, this issue is unpreserved. See *id*. at 358 (issues must be raised, addressed, or decided by the trial court to be preserved for appeal). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (quotation marks and citation omitted).

MRE 201(b) states that a fact gleaned under judicial notice "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The purpose of judicial notice is to save "time, trouble and expense which would be lost in establishing in the ordinary way facts which do not admit of contradiction." *Winekoff v Pospisil*, 384 Mich 260, 268; 181 NW2d 897 (1970) (quotation marks and citation omitted). Further, "[j]udicial notice is based upon very obvious reasons of convenience and expediency; and the wisdom of dispensing with proof of matters within the common knowledge of everyone has never been questioned." *Id*. (quotation marks and citation omitted). For this reason, "a court may take judicial notice of its own files and records." *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009); see also *Knowlton v Port Huron*, 355 Mich 448, 452; 94 NW2d 824 (1959).

In this case, however, the trial court did not seek out information within its own files and records, but instead asked staff at a district court whether they knew of or "would vouch for" Williams's official participation as a recovery coach. Specifically, the court stated, "I couldn't find anybody in district court that would vouch and say that she is a member of their program . . . ." Because the trial court did not indicate whether the answer came as a result of staff looking at files or records of the same, the replies cannot be said to be reliable to the point of avoiding possible contradiction. Further, a person's participation as a recovery coach also could not be said to be general knowledge within a district. Therefore, the trial court plainly erred when it considered information that was not allowable under judicial notice and not otherwise presented on the record. The trial court plainly erred by conducting its own investigation and making evidential inquiries outside the evidence presented on the record.

Defendant argues in reply that the error was harmless because the trial court gleaned only that Williams was not formally appointed as of that time. However, as will be explored more fully in the next issue, the trial court appears to have improperly used the information to assess Williams's credibility. This error affected plaintiff's substantial right to make routine decisions about the children's care, control, and custody. See MCL 722.27a(11); *In re Williams*, 286 Mich App 253, 281; 779 NW2d 286 (2009).

Plaintiff next argues that the trial court erred when it imposed restrictions on plaintiff's parenting time, particularly regarding Williams's involvement, because it was against the great weight of the evidence, the same evidence that the trial court used when it concluded that no change in custody was warranted. Plaintiff further argues that the trial court failed to apply the proper three-tiered procedure for assessing parenting time.

Our Legislature imposes the standard of review in child custody appeals as follows:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. [MCL 722.28.]

A trial court commits a legal error requiring appellate court correction when it "incorrectly chooses, interprets, or applies the law." *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994). However, the de novo standard of review does not apply to matters related to custody. *Id*. at 882. Instead, "upon a finding of error, appellate courts should remand to the trial court unless the error was harmless." *Id*.

Our Supreme Court has defined "against the great weight of evidence" as "clearly preponderat[ing] in the opposite direction." *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959). However, deference is given to the trial court's determinations of credibility and the trial court's superior position to make findings of fact. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). Therefore, this Court "may not substitute its judgment for that of the trial court on questions of fact unless the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks, citations, and brackets omitted).

Matters decided in a trial court's discretion are reviewed for abuse of that discretion. *Id*. at 705. Importantly,

> [t]he term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. [*Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).[5]]

These two standards of review tie closely with each other in custody issues, considering that the trial court's "discretion in weighing the evidence regarding a particular factor is not unlimited; rather, it must be supported by the weight of the evidence." *Fletcher*, 447 Mich at 881. This Court, therefore, reviews the record and the trial court's decisions related to its findings to determine whether the outcome is "so contrary to the great weight of the evidence as to disclose an unwarranted finding, or whether the verdict is so plainly a miscarriage of justice as to call for a new trial." *Id*. at 878 (quotation marks and citation omitted).

---

[5] Although the *Spalding* formulation of the abuse-of-discretion standard was largely abrogated by *Maldonado v Ford Motor Co*, 476 Mich 372, 387; 719 NW2d 809 (2006), it is still applicable to child custody determinations. *Shulick v Richards*, 273 Mich App 320, 325; 729 NW2d 533 (2006); see also *Fletcher*, 447 Mich at 880-881.

The best interests of the children involved govern decisions related to custody issues, including parenting time. MCL 722.27a(1); *Berger*, 277 Mich App at 716. Similarly, the trial court has an "obligation to avoid changes that might disrupt the child's custodial environment." *Kaeb v Kaeb*, 309 Mich App 556, 567; 873 NW2d 319 (2015).

Three cases in particular guide trial courts when faced with requests for changes to custody and parenting time.

*Vodvarka v Grasmeyer*, 259 Mich App 499, 508-509; 675 NW2d 847 (2003), sets forth the requirement that the proponent of a change in custody demonstrate a proper cause or change in circumstances sufficient to revisit a custody issue. Under this structure, a proper cause is "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. A change in circumstances for this purpose means that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513.

The second case, *Shade v Wright*, 291 Mich App 17, 28; 805 NW2d 1 (2010), instructs that when a requested change involves only parenting time and would not alter the established custodial environment, the definitions of proper cause and change of circumstances given in *Vodvarka* are not applicable. Rather, "[w]hereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id*. at 28-29, citing MCL 722.27a. However, the *Shade* Court did not assign specific definitions to the terms regarding applicability to a change in parenting time. *Kaeb*, 309 Mich App at 569.

Third, *Kaeb*, *id*. at 570-571, is applicable when a party requests the imposition of a condition on parenting time. See also *Marik*, 325 Mich App at 367-368. This Court in *Kaeb*, 309 Mich App at 571-572, adopted a requirement similar to that of *Shade*, holding that "a party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change in circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests." See also MCL 722.27(1)(c).

In this case, defendant requested that conditions be imposed on plaintiff's existing parenting time. Therefore, under *Kaeb*, the burden was on defendant to demonstrate a proper cause or change in circumstances sufficient to justify the change and that parenting time was not serving the children's best interests before the change.[6]

---

[6] Plaintiff also argues that the conditions imposed on his parenting time would alter the established custodial environment, implying that the stricter definitions of proper cause or change in circumstances of *Vodvarka* should apply. However, "[t]here is only a change to the established custodial environment if parenting-time adjustments change whom the child naturally looks to for

Plaintiff argues that the trial court erred when it considered only the best-interest factors under the Child Custody Act of 1970, but not those for parenting time. However,

> [b]oth the statutory best interest factors in the Child Custody Act [of 1970], MCL 722.23, and the factors listed in the parenting time statute, MCL 722.27a[(7)], are relevant to parenting time decisions. Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues. [*Shade*, 291 Mich App at 31-32.]

Further, MCL 722.27a(7) states that the trial court may consider the listed best-interest factors for parenting time. The word "may" in this context signals that it is within the trial court's discretion. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008) (stating that "the term 'may' is typically permissive").

In this case, the trial court committed clear legal error when it did not discuss whether a proper cause or change of circumstances existed since entry of the October 2019 custody order that rendered imposition of the parenting-time conditions necessary. In fact, plaintiff and Williams entered into a relationship before October 2019, from which time both took measures to improve themselves as parents through classes and abstention from alcohol and drug use other than plaintiff's marijuana use. They participated in counseling and school-related sessions with the boys, and the boys' performance was gradually improving. CPS investigations completed since October 2019 found allegations of abuse or neglect to be unsubstantiated.

Next, the trial court minimally considered how it believed that the restrictions regarding Williams were in the best interests of the children. However, just as the trial court was vocally skeptical that plaintiff or Williams actually improved their lives and behaviors since the entry of the October 2019 order, we are equally suspicious that the trial court's decision to impose restrictions regarding Williams's participation in parenting went beyond a mere credibility determination and was driven by passion or bias.

Defendant alleged several shortcomings of Williams in defendant's complaint for custody, but nearly all of these were left unproven, as the trial court acknowledged. The trial court also acknowledged that the testimony showed that Williams was clean from drug use and serving as a recovery coach, though it added multiple times that it was "stunned" by that. The trial court found, for example, that it made no sense that Williams allowed her daughter to wind up in a guardianship yet subsequently attempted to improve herself as a stepmother, even though it also acknowledged that Williams's decisions were made with her attorney in an attempt to "salvage a bad situation." Perhaps most telling was when the trial court found that Williams "gums up whatever communications . . . that need to be had between [plaintiff] and [defendant] and creates some animosity there." The trial court supported that finding by pointing to an older Facebook post, but

---

guidance, discipline, the necessities of life, and parental comfort." *Marik*, 325 Mich App at 361 (quotation marks and citation omitted). Although plaintiff notes that the conditions imposed by the trial court would cause significant hardship and perhaps disruption to the home environment while in his care, that is not the same as changing the established custodial environment, and this argument fails.

ignored significant testimony that Williams was the one who called or talked with defendant about major issues; that defendant felt that she could communicate more effectively with Williams than she could with plaintiff; and that, for a period, defendant felt that she was actually coparenting with Williams instead of plaintiff. In all, the trial court appeared to be overly concerned about holding Williams's past against her, as well as plaintiff for choosing to enter into a relationship with a recovering drug addict.

In sum, the trial court stated that

it makes no sense to the [c]ourt that somehow that's in the best interests of the minor children that now we've got Ms. Williams, who's running them to doctor's appointments, to school, etcetera. I don't think that helps anybody. It certainly doesn't help the minor children. And again, I'm inherently suspicious of the motivation there and whether that is in any way, shape, or form good for the minor children.

To the contrary, Williams helped facilitate plaintiff's ability to work and generally eliminated family stress by transporting the boys to and from school events and appointments. It helped the boys by allowing them the opportunity to be involved in extracurricular activities. The trial court's assessment of Williams's motivation is not only irrelevant to the determination but further suggests that the trial court held a bias against her, presumably on the basis of her former addiction and the turmoil it caused. To that end, the trial court abused its discretion and imposed conditions regarding Williams that went against the great weight of the evidence.

Because the trial court committed clear legal error when it failed to make a finding that proper cause or change of circumstance existed to merit conditions on plaintiff's parenting time and abused its discretion when it made unwarranted findings and determined that the weight of the evidence supported the children's best interests, the trial court's order imposing the restrictions limiting Williams's participation is vacated, and the October 2019 custody agreement remains in effect.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron